**RUSS AUGUST & KABAT**
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Reza Mirzaie, SBN 246953
rmirzaie@raklaw.com
Dale Chang, SBN 248657
dchang@raklaw.com
Paul A. Kroeger, SBN 229074
pkroeger@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
*MR Technologies GMBH*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MR TECHNOLOGIES GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., and TOSHIBA ELECTRONICS DEVICES AND STORAGE CORPORATION,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

RUSS, AUGUST & KABAT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff MR Technologies GmbH ("MR Tech") makes the following allegations against Defendants Toshiba America Electronic Components, Inc. ("Toshiba America") and Toshiba Electronics Devices and Storage Corporation ("Toshiba Electronics"):

## INTRODUCTION

1.     This complaint arises from Defendants' unlawful infringement of Plaintiff's U.S. Patent Nos. 9,928,864 ("'864 Patent"); 11,138,997 ("'997 Patent"); and 12,020,734 ("'734 Patent") (collectively, "Asserted Patents").

2.     The accused products are perpendicular magnetic recording (PMR) hard disk drives (HDDs) and PMR media made, used, offered for sale, or sold in, or imported into, the United States—whether directly by Defendants or indirectly through Defendants' OEM customers, distributors, retailers, or other intermediaries—including computer devices (e.g., laptops, desktops, servers, game consoles, and/or storage devices) that contain infringing HDD products.

## PARTIES

3.     MR Technologies is a privately held company, having its principal place of business at Nibelungengasse 11/4, 1010 Vienna, Austria.

4.     Defendant Toshiba America Electronic Components, Inc. ("Toshiba America") is a corporation organized under the laws of California, with its principal place of business at 5231 California Avenue, Suite 210, Irvine, CA 92617.

5.     Defendant Toshiba Electronics Devices and Storage Corporation ("Toshiba Electronics") is a corporation organized under the laws of Japan, with its headquarters at 580-1, Horikawa-Cho, Saiwai-Ku, Kawasaki, Kanagawa 212-8520, Japan, and its registered principal office at 1-1, Shibaura 1-Chome, Minato-ku, Tokyo 105-0023, Japan.

6.     Toshiba America is a wholly-owned subsidiary of Toshiba Electronics.

## JURISDICTION AND VENUE

7.    This action arises under Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.    This Court has personal jurisdiction over Defendants in this action because Defendants have committed acts within this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Asserted Patents. Defendants derive substantial revenue from such activities by placing infringing products into the stream of commerce for purchase and use by consumers in this District. *See, e.g.*, https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html ("Toshiba Electronic Devices & Storage Corporation and its affiliates (Toshiba) supply a wide range of innovative hard disk drive (HDD) products to meet the varied demands of the diversified storage marketplace. Products include high capacity power-efficient storage for Cloud Data Centers, capacity and performance HDDs for Enterprise IT, client HDDs for PC/Desktop, and specialty drives for Surveillance, NAS systems, set-top box video, gaming and external storage. Toshiba aims to continue to advance HDD technologies and innovation to meet and exceed customer requirements across a broad spectrum of storage market segments."); https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd.

9.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Defendant Toshiba America has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe

RUSS, AUGUST & KABAT

the Asserted Patents. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external.

10.  Defendant Toshiba Electronics is a foreign corporation such that venue is proper in any judicial district under 28 U.S.C. § 1391(c)(3).

## INFRINGEMENT BACKGROUND

11.  The Asserted Patents are directed to magnetic recording media used in hard disk drives that transcended prior art attempts to overcome the "super paramagnetic limit" which restricted the amount of data that could be stored in existing media. The patents describe and claim a multilayered nucleation host formed on a hard storage layer. The nucleation host has two or more ferromagnetic layers with increasing anisotropy (the resistance to changes in magnetization away from an easy axis) layer to layer toward the hard storage layer (i.e., the anisotropy of a ferromagnetic layer that is closer to the hard storage layer is higher than the anisotropy of a ferromagnetic layer that is farther away from the hard storage layer). Adjacent ferromagnetic layers are exchange coupled directly or via a thin coupling layer. The nucleation host is also exchange coupled to the hard storage layer, either directly or via a coupling layer.

12.  Dr. Dieter Suess, the inventor of the Asserted Patents, has been a renowned physicist in micromagnetics since the early 2000s. In the May 2006 timeframe, Dr. Suess used his own micromagnetics modeling software (which he developed in connection with earning his Ph.D.) to perform advanced micromagnetic simulations of multilayer magnetic recording structures. This led to his groundbreaking discovery that a multilayer nucleation host with increasing anisotropy toward an underlying hard storage layer can decrease the coercive field (making it easier to write to the hard storage layer) while maintaining thermal stability.

13.  Having the anisotropy increase toward a hard magnetic storage layer was contrary to convention wisdom at the time. In part, that is because the hard

COMPLAINT FOR PATENT INFRINGEMENT

RUSS, AUGUST & KABAT

storage layer of the claimed invention is toward the bottom of the stack, near the substrate, and farthest away from the write head. Because the write field decreases as the distance from the write head increases, conventional wisdom was to put the hardest layer with the highest anisotropy closest to the write head. Dr. Suess's invention shattered the conventional thinking, putting the hard storage layer on the bottom, farthest from the write head, and interposing a plurality of ferromagnetic layers between the write head and the hard storage layer with the anisotropy of a ferromagnetic layer that is closer to the hard storage layer being higher than the anisotropy of a ferromagnetic layer that is farther away from the hard storage layer.

14.    Dr. Randall Victora—who has worked with and received funding from HDD market leaders Western Digital and Seagate since at least 2000—has praised Dr. Suess's invention and related work. In a 2017 letter nominating Dr. Suess for IEEE Fellow ("*Victora IEEE Letter*"), Dr. Victora recognized Dr. Suess as the inventor of the exchange spring media adopted by the HDD industry, and acknowledged that "almost all state of the art hard disks rely on this idea":

> The general belief was that a high thermal stability goes along with a high coercivity. However, the new media demonstrated that the coercivity can be partially decoupled from thermal stability by the use of **multiple magnetic layers with graded anisotropy**. The concept of exchange spring media was patented by D. Suess in 2006. **This new storage media was quickly applied by industry**. Media based on the new concept was quickly adopted by industry: nowadays, **almost all state of the art hard disks rely on this idea**. The work on exchange spring media of D. Suess is cited over 800 times.

*See MR Techs. GmbH v. Western Digital Techs., Inc.*, No. 8:22-cv-01599 (C.D. Cal.) ("*MRT-I*"), Dkt. 632 at 112:5-113:8. Dr. Victora's IEEE letter goes on to cite Dr. Suess's extensively cited article *Multilayer exchange spring media for magnetic recording*, Appl. Phys. Lett. 89, 113105 (2006) and the application that issued as the '864 Patent. *Id.* 113:16-114:23.

15.    In an April 2018 IEEE Magnetics Society presentation titled "Recent

COMPLAINT FOR PATENT INFRINGEMENT

developments in magnetic recording media" ("*Srinivasan: Magnetic Recording Media*"), Western Digital's Director of Materials Engineering Dr. Kumar Srinivasan also credited Dr. Suess's invention as the solution to the superparamagnetic limit trilemma:



*See also* https://scvmag.org/event/recent-developments-in-magnetic-recording-media/ ("Another major breakthrough was the introduction of the exchange-spring (ES) media [which] allowed for improved media writability and switching field distributions, without sacrificing thermal stability [and] helped achieve areal densities of ~1Tbit/in$^2$.").

16.    Dr. Srinivasan also showed how Dr. Suess's invention unlocked the path for increasing areal densities from about 200 Gb/in$^2$ to upwards of 1 Tb/in$^2$—

5

and like Dr. Victora, he acknowledged that Dr. Suess's invention "has **guided most of the advances in PMR media since inception**":





Srinivasan: Magnetic Recording Media.

17.    A 2020 NanoInnovation conference presentation by Dr. Gaspare Varvaro of the Nanostructured Magnetic Materials Laboratory (nM²-Lab) in Italy, provides a similar illustration of how Dr. Suess's invention unlocked the path to areal densities far higher than 200 Gb/in²:



RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

https://www.nanoinnovation2020.eu/home/PPT/Hard%20Disk%20Drives%20_%2
0Magnetic%20Memories_Varvaro.pdf ("*Varvaro: Hard Disk Drives*").

18.    In August 2022, MR Tech asserted the '864 and '997 patents against
Western Digital Technologies, Inc. ("Western Digital") in *MR Techs. GmbH v.
Western Digital Techs., Inc.*, No. 8:22-cv-01599 (C.D. Cal.) ("*MRT-I*"). The accused
products included all of WD's hard disk drives (HDDs) sold in the U.S. since March
27, 2018, the issue date of the '864 Patent. On July 26, 2024, after an eight-day trial,
the jury returned its verdict, finding both patents infringed and not invalid, and
awarding $262,388,800 in damages to MR Tech—a lump sum, reasonable royalty
for all past and future infringement until the patents expire. On August 14, 2024, the
court entered judgment in accordance with the jury's verdict and further awarded
$117,267,508 in prejudgment interest as well as post-judgment interest of
approximately $46,000 per day.

19.    During the trial, Dr. Mark Re, Seagate's Chief Technology Officer from
2013 to 2018, confirmed that, like Western Digital, Seagate also adopted Dr. Suess's
invention. *MRT-I*, Dkt. 658 at 127:19-21 ("**Seagate uses Dr. Seuss' inventions in
the patents in this case.**"); Dkt. 632 ("**Seagate followed the path that Dr. Seuss put
forward in his invention.**"). Dr. Re also testified that "Dr. Seuss' two patents in this
case are **the foundation on which modern PMR media is built**," consistent with
Dr. Victora's recognition that "almost all state of the art hard disks rely on [Dr.
Suess'] idea."

20.    Dr. Peter Goglia—Executive Director at Seagate until 2004, VP of
R&D at Western Digital until 2007, and President of VeriTekk Solutions (a
consulting firm serving the HDD industry) since 2012 where he has studied
"technology trends and impact on areal density, technology transitions, areal density
growth" (*see* veritekk.com/about)—testified that "[b]y the end of 2007, the average
areal density industry-wide was approximately 240 gigabits per square inch."
*MRT-I*, Dkt. 662 at 51:11-14. He then testified that "it was shortly after this that **the**

*industry widely adopted the alleged infringing technology of multilayer media with varying anisotropy and layers.*" *Id.* 52:20-53:10. He testified that in fact, Western Digital would not be able to compete in the market without Dr. Suess's patented technology. *Id.* at 54:11-20 ("A. If Western Digital was not able to use multilayer media with varying anisotropy in the layers, would it be able to compete in terms of areal density in the market?   Q. Not likely. *I don't know if there's any other solutions out there, but that's the commonly accepted solution.*").

21.    Accordingly, on information and belief, Defendants' accused products use Dr. Suess's invention to achieve areal densities above 700 Gb/in2. In particular, on information and belief, the accused products include a nucleation host with two or more ferromagnetic layers that have increasing anisotropy towards an underlying hard storage layer, where the nucleation host has lower coercive field, and assists in switching, the hard storage layer.



*See, e.g.*, *MRT-I*, Dkt. 628 at 28:18-23 ("[T]he invention consists of a multilayered nucleation host with an overall increase in anisotropy as you head towards the hard storage layer, which is on the bottom of this stack."), 32:4-9 ("[T]he write field …

RUSS, AUGUST & KABAT

would start to interact with the first layer. That layer, because it's exchange coupled to the next layer, would interact with the following layer. And then those would help to switch the hard storage layer."), 34:10-14 ("[T]he effective coercive field of the nucleation host is lower than that of the hard storage layer."); C. Papusoi et al., *Measurements of Gilbert Damping Parameter α for CoPt-Based and CoFe-Based Films for Magnetic Recording Applications*, 51 J. Phys. D: Appl. Phys. 325002 (2018) ("*Papusoi-2018*") ("Current PMR media have an ECC structure consisting of several magnetic layers having a vertically graded anisotropy which enables the reduction of Hsw via an exchange spring effect" and "is expected to remain one of the key features of future PMR media.").

## <u>COUNT 1 – INFRINGEMENT OF THE '864 PATENT</u>

22.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

23.    Plaintiff is the owner and assignee of United States Patent No. 9,928,864 titled "Multilayer exchange spring recording media." The '864 Patent was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018. Plaintiff is the owner and assignee of the '864 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

24.    Defendants make, use, offer for sale, sell, and/or import—or sell to others who import—into the United States products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '864 Patent. These infringing products include, without limitation, Defendants' hard disk drives (HDDs) made, used, sold, or imported into the United States, and all versions and variations thereof since the '864 Patent issued ("Accused Products"). The Accused Products include, without limitation, all HDD products listed on Defendants' HDD

webpages—including any OEM-branded versions or variations bearing different model names:

- https://storage.toshiba.com/consumer-hdd/internal (e.g., S300 / S300 Pro, N300 / N300 Pro, X300 / X300 Pro, P300, and L200 Series HDDs)

- https://storage.toshiba.com/consumer-hdd/external (e.g., Canvio Flex, Canvio Gaming, Canvio Slim, Canvio Advance, Canvio Advance Plus, Canvio Ready, and Canvio Basics Series HDDs)

- https://storage.toshiba.com/enterprise-hdd (e.g., MG11, MG10F, MG10, MG10-D, MG09, MG08, MG08-D, MG07, MG04, AL14SX, and AL15SE Series HDDs)

- https://storage.toshiba.com/internal-specialty-hdd (e.g., MD04-V, DT02-VH, DT02-V, NAS MN, MD07ACA, MD04, DT02, DT01, MQ04, MQ01ABD, MQ01ABF, MQ01ABU-W, MQ01ABU-BW, MQ01ACF, and MQ04-V Series HDDs)

25.    Defendants have also infringed, and continue to infringe, claims of the '864 Patent through their design, development, marketing, and sales activity in the United States and abroad. By way of example, Defendants design, develop, and market infringing HDD products in the United States, including at Toshiba America's Irvine, CA headquarters, to sell infringing HDD products to worldwide original equipment manufacturers ("OEMs") that in turn import into the United States computer devices (e.g., laptops, desktops, servers, and/or storage devices) that include infringing HDD products. It is a direct and foreseeable consequence that Defendants' design, development, sales, and marketing activities in the United States and abroad result in worldwide sales of infringing HDDs that are subsequently offered for sale, sold, or imported in the United States.

RUSS, AUGUST & KABAT

10

26.    On information and belief, Defendants have had knowledge of the '864 Patent and their infringement of the '864 Patent since at least July or August 2024 when the *MRT-I* trial drew widespread attention in the industry due to the damages amount of over $262 million and judgment award of $380 million as well as the massive scope of infringement, with the jury finding that all Western Digital hard disk drives (HDDs) sold in the U.S. since 2018 infringe the '864 Patent. *See, e.g.*,    https://news.bloomberglaw.com/ip-law/western-digital-infringed-austrian-firms-hard-drive-patents; https://blocksandfiles.com/2024/08/13/wd-loses-patent-infringement-lawsuit-at-262-million-cost/ (MR Tech "accused WD of misusing Suess's IP 'on a massive scale' by applying it in almost every disk drive it has produced since 2018."); https://www.law360.com/articles/1858744/western-digital-owes-305m-over-hard-drive-ip-jury-told ("Suess said the point of his inventions was to break the superparamagnetic limits based on combining hard and soft magnetic layers, referred to as 'exchange spring media' to improve magnetic recording performance. His findings have been cited thousands of times by other scientists and researchers, and Suess said he eventually submitted patent applications for his inventions in 2006.").

27.    Moreover, Western Digital is one of just two competitors to Toshiba in a three-player market (the third being Seagate). The *MRT-I* verdict also implicated Defendants' HDDs because, like the infringing Western Digital HDDs, Defendants' HDDs use magnetic recording media that include two or more ferromagnetic layers with increasing anisotropy toward an underlying hard storage layer. *See* Infringement Background.

28.    In addition, on March 21, 2012, Dr. Suess provided notice to Defendants by sending the application for the '864 Patent, stating that it "might be of utmost interest for Toshiba" and suggesting a meeting to discuss potential licensing. On March 23, 2012, Defendants responded stating that their HDD development division was not interested in pursuing a potential license.

29.      Defendants, with knowledge of the '864 Patent and their infringement of the '864 Patent—since July or August 2024 as discussed above, or at least through service of this complaint—have induced others to infringe under 35 U.S.C. § 271(b). For example, with knowledge that their HDD products infringe the '864 Patent, Defendants have and continue to develop, design, market, and sell infringing HDD products to OEMs in the United States and abroad, with knowledge, expectation, specific intent, and foresight that OEMs and parties related to OEMs, including customers, distributors, counterparties and intermediaries, will infringe the '864 Patent by importing, selling, offering to sell, using, and/or making infringing HDD products in the United States.

30.      Defendants have and continue to specifically intend that their customers infringe the '864 Patent because Defendants have knowledge that the Accused Products infringe claims of the '864 Patent including, without limitation, Claim 1. *See, e.g.*, Infringement Background. Defendants, with knowledge of the '864 Patent, designs, manufactures and sells HDD products with the claimed "magnetic recording medium" of the '864 Patent, including, without limitation, Claim 1, in the United States and abroad. Defendants, *inter alia*, offers to sell and sells HDD products that include every limitation of at least Claim 1 of the '864 Patent to OEM customers with the knowledge and specific intent that the OEM customer will include the infringing HDD product in its computer products (e.g., laptop, desktop, server, and/or storage computer products) that the OEM customer will import, offer to sell, and sell in the United States. For example, Defendants knowingly and intentionally instruct their customers, OEMs, distributors, and retailers to infringe at least through product documentation, design specifications, data sheets, development content, white papers, and other materials, such as those located on Toshiba's website at storage.toshiba.com. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd;

RUSS, AUGUST & KABAT

https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html. Defendants have specific intent that the OEM customer will import, offer to sell, and sell computer products with infringing HDDs in the United States including because Defendants specifically design infringing HDDs to work within OEM products that Defendants know the OEM offers for sale and sells in the U.S.

31. For example, the infringing HDD drives include controllers with SATA and/or SAS connectivity and standard 2.5 inch and/or 3.5 inch form factors for the purpose of use within OEM systems that will be imported, sold, and/or used in the United States. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html ("Toshiba Electronic Devices & Storage Corporation and its affiliates (Toshiba) supply a wide range of innovative hard disk drive (HDD) products to meet the varied demands of the diversified storage marketplace. Products include high capacity power-efficient storage for Cloud Data Centers, capacity and performance HDDs for Enterprise IT, client HDDs for PC/Desktop, and specialty drives for Surveillance, NAS systems, set-top box video, gaming and external storage. Toshiba aims to continue to advance HDD technologies and innovation to meet and exceed customer requirements across a broad spectrum of storage market segments.").

32. Defendants actively market, advertise, and promote their infringing HDD drives and the added capacity gains from infringement of the '864 Patent in the United States, knowing that the infringing drives will be offered for sale and sold in the United States by their customers, including OEMs. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-

RUSS, AUGUST & KABAT

storage.com/us/storage/about-our-storage-products/overview.html. Defendants' induced infringement has resulted in direct and foreseeable damages including from their worldwide sales of infringing HDD products that are later imported, used, or sold by others in the U.S.

33. Defendants have had knowledge of or have been willfully blind to the '864 Patent and the infringing nature of the accused products since at least July or August 2024 as discussed above or at least the filing of this Complaint. Despite this knowledge, Defendants have continued to make, use, offer for sale, sell and/or import the Accused Products knowing such products infringe the '864 Patent. Defendants' infringement of the '864 Patent is intentional, purposeful, and willful for the additional reason that Defendants know that at least their CMR and SMR HDD products must infringe to compete in the United States, and therefore willfully infringe the '864 Patent in an attempt to maintain and/or grow their market share by continuing to design, market, and sell infringing HDDs. *See* Infringement Background.

34. The Accused Products satisfy all limitations of one or more claims of the '864 Patent. *See* Infringement Background. For example, the Accused Products include "A magnetic recording medium." In particular, the Accused Products include at least one disk that comprises a perpendicular magnetic recording (PMR) medium, e.g.:



COMPLAINT FOR PATENT INFRINGEMENT

RUSS, AUGUST & KABAT

Toshiba TAEC, *Embrace a Tradition of Being at The Cutting Edge | Toshiba HDDs*, YouTube (Apr. 19, 2017), https://www.youtube.com/watch?v=e4yvdAVwmF0.

35.    The Accused Products include "an essentially non-magnetic substrate." On information and belief, the Accused Products include a glass or AlMg substrate, both of which are non-magnetic. The 2016 book chapter *Conventional Perpendicular Magnetic Recording Media* in Ultrahigh-Density Magnetic Recording (2016) ("*Conventional PMR Media*") explains that in PMR media, "AlMg substrates for desktop and most server products and glass substrates for mobile and partial server products are typically used." *See Conventional PMR Media* at 138.

36.    The Accused Products include "an underlayer formed on the non-magnetic substrate." The *MRT-I* court construed "underlayer" as "one or more layers on which the hard magnetic storage layer is formed." *MRT-I*, Dkt. 195. The Accused Products include a soft magnetic underlayer (SUL) formed on the non-magnetic substrate:



**Figure 3.2**    Definition of layer structure on a cross-sectional TEM image of typical perpendicular media.

*Conventional PMR Media* at 138 ("PMR media consist of an adhesion layer (AOL), **an SUL**, an intermediate layer (IL), a magnetic recording layer (MAG), a carbon overcoating (COC), and a lubricant layer (lube), as shown in Fig. 3.2.").

37.    The Accused Products include "an exchange coupled magnetic multilayer structure." The *MRT-I* court construed "exchange coupled magnetic multilayer structure" as "a structure including a nucleation host that is exchange coupled to a hard magnetic storage layer," where "exchange coupled" means "the magnetic moments in the nucleation host interact through exchange with the moments in the hard magnetic storage layer." *MRT-I*, Dkt. 195. On information and belief, the Accused Products include a magnetic multilayer structure comprising a nucleation host (purple) that is formed on and exchange coupled to a hard magnetic storage layer (green):



*See* Infringement Background; *see also Papusoi-2018* ("Current PMR media have an ECC structure consisting of several magnetic layers having a vertically graded anisotropy which enables the reduction of Hsw via an exchange spring effect" and "is expected to remain one of the key features of future PMR media.").

38. This is also evidenced in the industry references discussed in Infringement Background above and annotated below, with the bottom mag layer being the hard magnetic storage layer and the stack containing the upper mag layers being the nucleation host:



*Conventional PMR Media*    *Varvaro: Hard Disk Drives*    *Srinivasan: Magnetic Recording Media*

*See also Victora IEEE Letter* ("[Dr. Suess's] new media demonstrated that the coercivity can be partially decoupled from thermal stability by the use of multiple magnetic layers with graded anisotropy" and "was quickly adopted by industry: nowadays, almost all state of the art hard disks rely on this idea.");

https://scvmag.org/event/recent-developments-in-magnetic-recording-media/

("Another major breakthrough was the introduction of the exchange-spring (ES) media … [which] allowed for improved media writability and switching field distributions, without sacrificing thermal stability.").

39. The Accused Products include a hard magnetic storage layer, having a first coercive field Hs>0.5 T, formed on the underlayer. The *MRT-I* court construed "hard magnetic storage layer" as "a magnetic layer that stores information in magnetically oriented bits," and "coercive field" as "a property of magnetic materials that provides a measure of the ability of a ferromagnetic material to withstand an external magnetic field without becoming demagnetized." *MRT-I*, Dkt. 195. On information and belief, the Accused Products include a hard magnetic storage layer (green) formed on the SUL:

RUSS, AUGUST & KABAT



*See* Infringement Overview.

40.    The hard storage layer in the accused products stores information in magnetically oriented bits, e.g., upward or downward as indicated by the arrows below.



*Conventional PMR Media*          *Srinivasan: Magnetic Recording Media*



RUSS, AUGUST & KABAT

Seagate Technology, *How a Hard Disk Drive Works*, YouTube (Aug. 7, 2012), https://www.youtube.com/watch?v=NtPc0jI21i0.

41.    The hard storage layer in the accused products has a coercive field Hs above 0.5 T. A coercive field (Hc) is determined using the formula $Hc = 2\,K_{eff}/M_{eff}$ where $K_{eff}$ is the average anisotropy constant and $M_{eff}$ is the average saturation magnetization. *See, e.g.*, '864 Patent 6:56; *Papusoi-2018* ("Since recording occurs on a short time scale (~1 ns), the medium coercivity and saturation field approach the anisotropy field $Hk = 2K/Ms$ where Ms is the saturation magnetization."). On information and belief, the hard storage layer in the accused products is made of a CoCrPt or similar alloy having a 2K/M coercive field of approximately 2.0 T. *See Varvaro: Hard Disk Drives* (PMR media includes "multilayer structures consisting of CoCrPt-Oxide magnetic layers (ML) with different anisotropy (K)"); *Papusoi-2018* ("The magnetic recording layers of PMR media typically have Hk ~20kOe.").[1]

42.    The hard storage layer (part of the "MAG" stack in the right figure below), is formed on the underlayer (SUL).



**Figure 3.2**    Definition of layer structure on a cross-sectional TEM image of typical perpendicular media.

*See* Infringement Background; *Conventional PMR Media* at 138 ("PMR media consist of an adhesion layer (AOL), an SUL, an intermediate layer (IL), a magnetic

---

[1] 20kOe converts to 2.0 T.

COMPLAINT FOR PATENT INFRINGEMENT

Russ, August & Kabat

recording layer (MAG), a carbon overcoating (COC), and a lubricant layer (lube), as shown in Fig. 3.2."); *Papusoi-2018* ("In PMR, a magnetically soft-underlayer (SUL), located below the magnetic recording layer(s), is used to enhance the field acting on the recording layer(s)").

43.    The Accused Products include "a nucleation host, having a second coercive field Hn without the hard magnetic storage layer, lower than the first coercive field, Hn<Hs." The *MRT-I* court construed "nucleation host" as "a structure that includes ferromagnetic layers that assist in switching the hard magnetic storage layer, and optional coupling layers," and "coupling layer" as "layer that alters the coupling between adjacent layers." *MRT-I*, Dkt. 195. As discussed above regarding the "exchange coupled magnetic multilayer structure" limitation, the accused products include a nucleation host having ferromagnetic layers that assist in switching the hard magnetic storage layer and coupling layers that alter the exchange coupling between the ferromagnetic layers. *See also* Infringement Background; *Papusoi-2018* ("Current PMR media have an ECC structure consisting of several magnetic layers having a vertically graded anisotropy which enables the reduction of [the minimum switching field] Hsw via an exchange spring effect.").

44.    The nucleation host has a coercive field Hn that is lower than Hs. *See, e.g.*, *Victora IEEE Letter* ("[Dr. Suess's] new media demonstrated that the coercivity can be partially decoupled from thermal stability by the use of multiple magnetic layers with graded anisotropy" and "was quickly adopted by industry: nowadays, almost all state of the art hard disks rely on this idea."); https://scvmag.org/event/recent-developments-in-magnetic-recording-media/ ("Another major breakthrough was the introduction of the exchange-spring (ES) media … [which] allowed for improved media writability and switching field distributions, without sacrificing thermal stability.").

45.    As discussed above, a coercive field (Hc) can be determined using the

COMPLAINT FOR PATENT INFRINGEMENT

RUSS, AUGUST & KABAT

formula Hc = 2 $K_{eff}/M_{eff}$ where $K_{eff}$ is the weighted average anisotropy constant and $M_{eff}$ is the weighted average saturation magnetization. *See, e.g.*, '864 Patent 6:56; *Papusoi-2018* ("Since recording occurs on a short time scale (~1 ns), the medium coercivity and saturation field approach the anisotropy field Hk = 2K/Ms where Ms is the saturation magnetization."). Because the nucleation host is formed of multiple layers, $K_{eff}$ can be determined by adding the K*l values for the layers (where l is layer thickness) and dividing the sum by the total thickness of the layers. *See, e.g.*, '864 Patent 6:47-51. Similarly, $M_{eff}$ can be determined by adding the M*l values for the layers (where l is layer thickness) and dividing the sum by the total thickness of the layers.

46.    Because Hk = 2K/M, Hn can be approximated as $Hk_{eff}$ of the nucleation host, which is the weighted average Hk (2K/M) of all the layers in the nucleation host. This can be simplified by excluding the coupling layers because their Hk values are much lower than the ferromagnetic layers and thus would only decrease Hn. In other words, removing the coupling layers provides a maximum Hn and if that value is lower than Hs, then Hn is necessarily lower than Hs. On information and belief, the maximum Hn (coercive field of the nucleation host) in the accused products is < 1.8 T and thus, Hn is lower than Hs (approximately 2.0 T, as discussed above)." *See also Papusoi-2018* ("Current PMR media have an ECC structure consisting of several magnetic layers having a vertically graded anisotropy which enables the reduction of [the minimum switching field] Hsw via an exchange spring effect.").

47.    The nucleation host in the accused products "is formed on the hard magnetic storage layer such that the hard magnetic storage layer is between the nucleation host and the non-magnetic substrate" and "is exchange coupled to the hard magnetic storage layer." As discussed above regarding the "exchange coupled magnetic multilayer structure" limitation, the nucleation host (purple) is formed on and exchange coupled to the hard magnetic storage layer (green) which is between the nucleation host and the non-magnetic substrate (black):

COMPLAINT FOR PATENT INFRINGEMENT



*See also* Infringement Background.

48.    The nucleation host in the accused products comprises ferromagnetic layers with increasing anisotropy constant K from layer to layer. The *MRT-I* court construed "nucleation host … comprises ferromagnetic layers with increasing anisotropy constant K from layer to layer" as "nucleation host includes two or more ferromagnetic layers which have anisotropy constants K, and the values of the anisotropy constants K for the layers increase as the layers get closer to the hard magnetic storage layer, such that the nucleation host has an overall increase in anisotropy toward the hard magnetic storage layer." *MRT-I*, Dkt. 195. The court also ruled that the claimed nucleation host can have plateaus or decreasing anisotropy constants K across adjacent ferromagnetic layers so long as there is an overall increase toward the hard storage layer. *Id.*

49.    As shown above, the nucleation host in the accused products includes two or more ferromagnetic layers with anisotropy constants K that increase toward the hard magnetic storage layer, such that the nucleation host has an overall increase in anisotropy toward the hard magnetic storage layer. *See also* Infringement

RUSS, AUGUST & KABAT

Background; *MRT-I*, Dkt. 628 at 28:18-23 ("[T]he invention consists of a multilayered nucleation host with an overall increase in anisotropy as you head towards the hard storage layer, which is on the bottom of this stack."); Dkt. 658 at 127:19-21 ("Seagate uses Dr. Seuss' inventions in the patents in this case."); *Papusoi-2018* ("Current PMR media have an ECC structure consisting of several magnetic layers having a vertically graded anisotropy which enables the reduction of Hsw via an exchange spring effect" and "is expected to remain one of the key features of future PMR media.").

50.    Defendants directly infringe, induce others to infringe, and contribute to the infringement by others of the '864 Patent under 35 U.S.C. § 271(a), (b), and (c) in this District and elsewhere.

51.    Defendants' infringement has been and continues to be willful, permitting Plaintiff to seek enhanced damages under 35 U.S.C. § 284. Defendants have known, or been willfully blind to the fact, that making, using, offering to sell, selling, and importing the accused products constitutes infringement of the '864 Patent.

52.    Plaintiff has complied with all requirements of 35 U.S.C. § 287 because it has not and does not make or sell any patented articles in the United States.

53.    As a result of Defendants' infringement of the '864 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## COUNT 2 – INFRINGEMENT OF THE '997 PATENT

54.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55.    Plaintiff is the owner and assignee of United States Patent No. 11,138,997 titled "Multilayer exchange spring recording media." The '997 Patent was duly and legally issued by the United States Patent and Trademark Office on

October 5, 2021. Plaintiff is the owner and assignee of the '997 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

56.    Defendants make, use, offer for sale, sell, and/or import—or sell to others who import—into the United States certain products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '997 Patent. These infringing products include, without limitation, Defendant's hard disk drives (HDDs) made, used, sold, or imported into the United States, and all versions and variations thereof since the '997 Patent issued. *See* Count 1.

57.    Defendants have also infringed, and continue to infringe, claims of the '997 Patent through their design, development, marketing, and sales activity in the United States and abroad. By way of example, Defendants design, develop, and market infringing HDD products in the United States, including at Toshiba America's Irvine, CA headquarters, to sell infringing HDD products to worldwide original equipment manufacturers ("OEMs") that in turn import into the United States computer devices (e.g., laptops, desktops, servers, and/or storage devices) that include infringing HDD products. It is a direct and foreseeable consequence that Defendants' design, development, sales, and marketing activities in the United States and abroad result in worldwide sales of infringing HDDs that are subsequently offered for sale, sold, or imported in the United States.

58.    On information and belief, Defendants have had knowledge of the '997 Patent and their infringement of the '997 Patent since at least July or August 2024 when the *MRT-I* trial drew widespread attention in the industry due to the damages amount of over $262 million and judgment award of $380 million as well as the massive scope of infringement, with the jury finding that all Western Digital hard disk drives (HDDs) sold in the U.S. since the '997 Patent issued infringe. *See* Count I.

59.    Moreover, Western Digital is one of just two competitors to Toshiba in

RUSS, AUGUST & KABAT

a three-player market (the third being Seagate). The *MRT-I* verdict also implicated Defendants' HDDs because, like the infringing Western Digital HDDs, Defendants' HDDs use magnetic recording media that include two or more ferromagnetic layers with increasing anisotropy toward an underlying hard storage layer. *See* Infringement Background.

60.    In addition, on March 21, 2012, Dr. Suess provided notice to Defendants by sending the parent application to the '997 Patent, stating that it "might be of utmost interest for Toshiba" and suggesting a meeting to discuss potential licensing. On March 23, 2012, Defendants responded stating that their HDD development division was not interested in pursuing a potential license.

61.    Defendants, with knowledge of the '997 Patent and their infringement of the '997 Patent—since July or August 2024 as discussed above, or at least through service of this complaint—have induced others to infringe under 35 U.S.C. § 271(b). For example, with knowledge that their HDD products infringe the '997 Patent, Defendants have and continue to develop, design, market, and sell infringing HDD products to OEMs in the United States and abroad, with knowledge, expectation, specific intent, and foresight that OEMs and parties related to OEMs, including customers, distributors, counterparties and intermediaries, will infringe the '997 Patent by importing, selling, offering to sell, using, and/or making infringing HDD products in the United States.

62.    Defendants have and continue to specifically intend that their customers infringe the '997 Patent because Defendants have knowledge that the Accused Products infringe claims of the '997 Patent including, without limitation, Claim 1. *See, e.g.*, Infringement Background. Defendants, with knowledge of the '997 Patent, designs, manufactures and sells HDD products with the claimed "magnetic recording system" of the '997 Patent, including, without limitation, Claim 1, in the United States and abroad. Defendants, *inter alia*, offer to sell and sell HDD products that include every limitation of at least Claim 1 of the '997 patent to

RUSS, AUGUST & KABAT

OEM customers with the knowledge and specific intent that the OEM customer will include the infringing HDD product in its computer products (e.g., laptop, desktop, server, and/or storage computer products) that the OEM customer will import, offer to sell, and sell in the United States. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html. Defendants have specific intent that the OEM customer will import, offer to sell, and sell computer products with infringing HDDs in the United States including because Defendants specifically design infringing HDDs to work within OEM products that Defendants know the OEM offers for sale and sells in the U.S.

63.    For example, the infringing HDD drives include controllers with SATA and/or SAS connectivity and standard 2.5 inch and/or 3.5 inch form factors for the purpose of use within OEM systems that will be imported, sold, and/or used in the United States. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html ("Toshiba Electronic Devices & Storage Corporation and its affiliates (Toshiba) supply a wide range of innovative hard disk drive (HDD) products to meet the varied demands of the diversified storage marketplace. Products include high capacity power-efficient storage for Cloud Data Centers, capacity and performance HDDs for Enterprise IT, client HDDs for PC/Desktop, and specialty drives for Surveillance, NAS systems, set-top box video, gaming and external storage. Toshiba aims to continue to advance HDD technologies and innovation to meet and exceed customer requirements across a broad spectrum of storage market segments.").

64.    Defendants actively market, advertise, and promote their infringing HDD drives and the added capacity gains from infringement of the '997 Patent in

RUSS, AUGUST & KABAT

the United States, knowing that the infringing drives will be offered for sale and sold in the United States by their customers, including OEMs. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html. Defendants' induced infringement has resulted in direct and foreseeable damages including from their worldwide sales of infringing HDD products that are later imported, used, or sold by others in the U.S.

65. Defendants have had knowledge of or have been willfully blind to the '997 Patent and the infringing nature of the accused products since July or August 2024 as discussed above or at least the filing of this Complaint. Despite this knowledge, Defendants have continued to make, use, offer for sale, sell and/or import the Accused Products knowing such products infringe the '997 Patent. Defendants' infringement of the '997 Patent is intentional, purposeful, and willful for the additional reason that Defendants know that their HDD products must infringe to compete in the United States, and therefore willfully infringe the '997 Patent in an attempt to maintain and/or grow their market share by continuing to design, market, and sell infringing HDDs. *See* Infringement Background.

66. The Accused Products satisfy all limitations of one or more claims of the '997 Patent. Claim 1 of the '997 Patent recites a magnetic recording system comprising a writing head and a disk including the same magnetic recording medium as '864 Patent claim 1. All accused HDDs contain magnetic recording systems (perpendicular magnetic recording (PMR) systems) that include a writing head and a disk, e.g.:

RUSS, AUGUST & KABAT



Toshiba TAEC, *Embrace a Tradition of Being at The Cutting Edge | Toshiba HDDs*, YouTube (Apr. 19, 2017), https://www.youtube.com/watch?v=e4yvdAVwmF0.

67.    The magnetic recording medium of the disks in the accused products meet the magnetic recording medium elements recited in '997 Patent claim 1 for the same reasons as '864 Patent claim 1. *See* Count 1.

68.    Defendants directly infringe, induce others to infringe, and contribute to the infringement by others of the '997 Patent under 35 U.S.C. § 271(a), (b), and (c) in this District and elsewhere.

69.    Defendants' infringement has been and continues to be willful, permitting Plaintiff to seek enhanced damages under 35 U.S.C. § 284. Defendants have known, or been willfully blind to the fact, that making, using, offering to sell, selling, and importing the accused products constitutes infringement of the '997 Patent.

70.    Plaintiff has complied with all requirements of 35 U.S.C. § 287 because it has not and does not make or sell any patented articles in the United States.

71.    As a result of Defendants' infringement of the '997 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## COUNT 3 – INFRINGEMENT OF THE '734 PATENT

72.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

73.    Plaintiff is the owner and assignee of U.S. Patent No. 12,020,734 titled "Multilayer exchange spring recording media." The '734 Patent was duly and legally issued by the United States Patent and Trademark Office on June 25, 2024. Plaintiff is the owner and assignee of the ' 734 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

74.    Defendants make, use, offer for sale, sell, and/or import—or sell to others who import—into the United States certain products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '734 Patent. These infringing products include, without limitation, Defendant's hard disk drives (HDDs) made, used, sold, or imported into the United States, and all versions and variations thereof, since the '734 Patent issued. *See* Count 1.

75.    Defendants have also infringed, and continue to infringe, claims of the '734 Patent through their design, development, marketing, and sales activity in the United States and abroad. By way of example, Defendants design, develop, and market infringing HDD products in the United States, including at Toshiba America's Irvine, CA headquarters, to sell infringing HDD products to worldwide original equipment manufacturers ("OEMs") that in turn import into the United States computer devices (e.g., laptops, desktops, servers, and/or storage devices) that include infringing HDD products. It is a direct and foreseeable consequence that Defendants' design, development, sales, and marketing activities in the United States and abroad result in worldwide sales of infringing HDDs that are subsequently offered for sale, sold, or imported in the United States.

76.    On information and belief, Defendants have had knowledge of the '734 Patent and their infringement of the '734 Patent since at least August 2024

when Plaintiff filed suit against Western Digital for infringement of the '734 Patent ("*MRT-II*") shortly after the *MRT-I* trial drew widespread attention in the industry due to the damages amount of over $262 million and judgment award of $380 million as well as the massive scope of infringement, with the jury finding that all Western Digital hard disk drives (HDDs) sold in the U.S. since the '734 Patent issued infringe. *See* Count I.

77.    Moreover, Western Digital is one of just two competitors to Toshiba in a three-player market (the third being Seagate). The *MRT-I* verdict also implicated Defendants' HDDs because, like the infringing Western Digital HDDs, Defendants' HDDs use magnetic recording media that include two or more ferromagnetic layers with increasing anisotropy toward an underlying hard storage layer. *See* Infringement Background. And claim 1 of the '734 Patent recites a substantially similar magnetic recording system as claim 1 of the '997 Patent except for an additional limitation requiring that at least two ferromagnetic layers are exchange coupled with an exchange coupling layer, which the accused products also meet (the exchange coupling layer is BL2 in left figure, the upper orange layer in middle figure, and the upper EBL in right figure):



*Conventional PMR Media*     *Varvaro: Hard Disk Drives*     *Srinivasan: Magnetic Recording Media*

*See also* Infringement Background.

78.    Thus, as the *MRT-II* court found, knowledge of infringement of the '997 Patent means it there is likely knowledge of infringement of the '734 Patent. *MRT-II*, Dkt. 32 at 8 ("Consequently, since Western Digital had knowledge that the '997 Patent was infringing, and the '734 Patent was a continuation of the '997 Patent, it

likely had knowledge that the '734 Patent was also infringing.").

79. In addition, on March 21, 2012, Dr. Suess provided notice to Defendants by sending the original parent application to the '734 Patent, stating that it "might be of utmost interest for Toshiba" and suggesting a meeting to discuss potential licensing. On March 23, 2012, Defendants responded stating that their HDD development division was not interested in pursuing a potential license.

80. Defendants, with knowledge of the '734 Patent and their infringement of the '734 Patent—since August 2024 as discussed above, or at least through service of this complaint—have induced others to infringe under 35 U.S.C. § 271(b). For example, with knowledge that their HDD products infringe the '734 Patent, Defendants have and continue to develop, design, market, and sell infringing HDD products to OEMs in the United States and abroad, with knowledge, expectation, specific intent, and foresight that OEMs and parties related to OEMs, including customers, distributors, counterparties and intermediaries, will infringe the '734 Patent by importing, selling, offering to sell, using, and/or making infringing HDD products in the United States.

81. Defendants have and continue to specifically intend that their customers infringe the '734 Patent because Defendants have knowledge that the Accused Products infringe claims of the '734 Patent including, without limitation, Claim 1. *See, e.g.*, Infringement Background. Defendants, with knowledge of the '734 Patent, designs, manufactures and sells HDD products with the claimed "magnetic recording system" of the '734 Patent, including, without limitation, Claim 1, in the United States and abroad. Defendants, *inter alia*, offer to sell and sell HDD products that include every limitation of at least Claim 1 of the '734 patent to OEM customers with the knowledge and specific intent that the OEM customer will include the infringing HDD product in its computer products (e.g., laptop, desktop, server, and/or storage computer products) that the OEM customer will import, offer to sell, and sell in the United States. *See, e.g.*, https://storage.toshiba.com/consumer-

RUSS, AUGUST & KABAT

hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage. toshiba.com/enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/ overview.html. Defendants have specific intent that the OEM customer will import, offer to sell, and sell computer products with infringing HDDs in the United States including because Defendants specifically design infringing HDDs to work within OEM products that Defendants know the OEM offers for sale and sells in the U.S.

82.     For example, the infringing HDD drives include controllers with SATA and/or SAS connectivity and standard 2.5 inch and/or 3.5 inch form factors for the purpose of use within OEM systems that will be imported, sold, and/or used in the United States. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/consumer-hdd/external; https://storage.toshiba.com/ enterprise-hdd; https://storage.toshiba.com/internal-specialty-hdd; https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/ overview.html ("Toshiba Electronic Devices & Storage Corporation and its affiliates (Toshiba) supply a wide range of innovative hard disk drive (HDD) products to meet the varied demands of the diversified storage marketplace. Products include high capacity power-efficient storage for Cloud Data Centers, capacity and performance HDDs for Enterprise IT, client HDDs for PC/Desktop, and specialty drives for Surveillance, NAS systems, set-top box video, gaming and external storage. Toshiba aims to continue to advance HDD technologies and innovation to meet and exceed customer requirements across a broad spectrum of storage market segments.").

83.     Defendants actively market, advertise, and promote their infringing HDD drives and the added capacity gains from infringement of the '734 Patent in the United States, knowing that the infringing drives will be offered for sale and sold in the United States by their customers, including OEMs. *See, e.g.*, https://storage.toshiba.com/consumer-hdd/internal; https://storage.toshiba.com/ consumer-hdd/external; https://storage.toshiba.com/enterprise-hdd;

RUSS, AUGUST & KABAT

https://storage.toshiba.com/internal-specialty-hdd;    https://toshiba.semicon-storage.com/us/storage/about-our-storage-products/overview.html.    Defendants' induced infringement has resulted in direct and foreseeable damages including from their worldwide sales of infringing HDD products that are later imported, used, or sold by others in the U.S.

84.    Defendants have had knowledge of or have been willfully blind to the '734 Patent and the infringing nature of the accused products since July or August 2024 as discussed above or at least the filing of this Complaint. Despite this knowledge, Defendants have continued to make, use, offer for sale, sell and/or import the Accused Products knowing such products infringe the '734 Patent. Defendants' infringement of the '734 Patent is intentional, purposeful, and willful for the additional reason that Defendants know that their HDD products must infringe to compete in the United States, and therefore willfully infringe the '734 Patent in an attempt to maintain and/or grow their market share by continuing to design, market, and sell infringing HDDs. *See* Infringement Background.

85.    The Accused Products satisfy all claim limitations of one or more claims of the '734 Patent. For example, the accused products infringe '734 Patent claim 1 for the same reasons as '997 Patent claim 1. *See* Count 2.

86.    Defendants directly infringe, induce others to infringe, and contribute to the infringement by others of the '734 Patent under 35 U.S.C. § 271(a), (b), and (c) in this District and elsewhere.

87.    Defendants' infringement has been and continues to be willful, permitting Plaintiff to seek enhanced damages under 35 U.S.C. § 284. Defendants have known, or been willfully blind to the fact, that making, using, offering to sell, selling, and importing the accused products constitutes infringement of the '734 Patent.

88.    Plaintiff has complied with all requirements of 35 U.S.C. § 287 because it has not and does not make or sell any patented articles in the United States.

RUSS, AUGUST & KABAT

89.    As a result of Defendants' infringement of the '734 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## JURY DEMAND

90.    Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Plaintiff prays for the following relief:

A.    A judgment in favor of Plaintiff that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.    A judgment and order requiring Defendants to pay Plaintiff past and future damages, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiff, including, without limitation, pre- and post-judgment interest;

D.    A judgment that Defendants' infringement is willful and enhanced damages under 35 U.S.C. § 284;

E.    A finding that this case is exceptional and an award of Plaintiff's reasonable attorney fees and costs under 35 U.S.C. § 285; and

F.    Any and all other relief to which Plaintiff may be entitled.

Dated:  April 15, 2025                    Respectfully submitted,

*/s/Marc A. Fenster*

COMPLAINT FOR PATENT INFRINGEMENT



Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Dale Chang (CA SBN 248657)
dchang@raklaw.com
Paul A. Kroeger (CA SBN 229074)
pkroeger@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
*MR Technologies GMBH*

35

COMPLAINT FOR PATENT INFRINGEMENT