David Yang (SBN 246132)
*dyang@hycounsel.com*
HAWKINSON YANG LLP
8033 W. Sunset Blvd. #3300
Los Angeles, CA 90046
(213) 634-0370 – Telephone
(213) 260-9305 – Facsimile

*Attorneys for Defendants Toshiba America Electronic Components, Inc. and Toshiba Electronic Devices and Storage Corporation*

*(additional counsel listed on next page)*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MR TECHNOLOGIES GMBH,<br><br>Plaintiff,<br><br>v.<br><br>TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., and TOSHIBA ELECTRONICS DEVICES AND STORAGE CORPORATION,<br><br>Defendants. | Case No. 8:25-cv-786-JVS-DFM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY**<br><br>Complaint Filed: April 15, 2025<br><br>Date: March 2, 2026<br>Time: 1:30 p.m.<br>Place: Court Room 10C<br>Judge: Hon. James V. Selna |

i                                        DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY

*(counsel caption continued from previous page)*

Douglas F. Stewart (pro hac vice)
*doug.stewart@bracewell.com*
Patrick J. Connolly (pro hac vice)
*patrick.connolly@bracewell.com*
BRACEWELL LLP
701 5th Avenue, Suite 6850
Seattle, Washington 98104
(206) 204-6271 – Telephone
(800) 404-3970 – Facsimile

David J. Ball (pro hac vice)
*david.ball@bracewell.com*
BRACEWELL LLP
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100 – Telephone
(800) 404-3970 – Facsimile

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 3

    A. MRT's Regurgitation Of Arguments From Its Motion To Dismiss Or Transfer The Resonac Declaratory Judgment Action Are Misplaced ................................................................................................. 3

    B. Resonac, Not Toshiba, Possesses The Evidence MRT Requires To Prosecute Its Case ........................................................................... 5

    C. MRT's Prior Litigation In This Court Is Not Relevant To The Court's Calculus On Whether To Grant A Stay ........................................ 7

    D. The Customer-Suit Exception Applies Here ............................................. 9

    E. A Stay Is The Most Efficient Path Forward Until Resonac's Role Is Clarified ................................................................................................ 10

III. CONCLUSION ............................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) .................................................................. 9

*Kruse Tech. P'ship v. DMAX, Ltd.*,
   2010 WL 11507591, Case No. SACV 09-00458-JVS
      (C.D. Cal. July 14, 2010) ............................................................... 8

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ........................................................... 5, 6, 10

*MR Techs. GmbH v. Seagate Tech. LLC*,
   No. 0:25-cv-1460, (D. Minn., April 15, 2025) .......................................... 8

*MR Techs., GmbH v. W. Digital Techs., Inc.*,
   No. 8:22-cv-01599-JVS-DFM, (C.D. Cal. July 8, 2024) ........................... 6

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   569 F. Supp. 2d 946 (N.D. Cal. 2008) ...................................................... 8

*Resonac Hard Disk Corp., et al. v. MR Technologies, GmbH*,
   Case No. 3:25-cv-08631 (N.D. Cal.) ..................................................... 3, 4

*Sillage LLC v. Kenrose Perfumes Inc.*,
   No. 8:14-CV-02043-CAS, 2015 WL 3649605
      (C.D. Cal., June 9, 2015) ............................................................... 10

*Snap Light, LLC v. KimsAPrincess, Inc.*,
   Case No. 17-cv-05648-JVS (C.D. Cal. Feb. 26, 2018) ..................... 5, 9, 10

Defendants Toshiba America Electronic Components, Inc. and Toshiba Electronic Devices and Storage Corporation (together, "Toshiba") respectfully submit this reply brief in further support of Toshiba's motion to stay and accompanying memorandum of points and authorities (Dkt. 31).

## I. INTRODUCTION

In opposition to Toshiba's motion to stay, Plaintiff MR Technologies, GmbH ("MRT") recycles—nearly verbatim—arguments that MRT asserts in its pending motion to dismiss the declaratory judgment action filed by Resonac Hard Disk Corporation ("RHDC") and Resonac America, Inc. ("REA" and, together with RHDC, "Resonac") in the Northern District of California. In that action, MRT moved to dismiss Resonac's complaint or ***transfer the litigation to this District***. In fact, MRT argues before both this Court and the Northern District that Resonac should intervene in this case as the appropriate procedural mechanism for an indemnitor/supplier, which demonstrates the propriety of Toshiba's requested relief as even MRT explicitly concedes the critical role that Resonac plays in this litigation.

Despite acknowledging that pivotal fact, MRT nonetheless asks this Court to forge ahead. But doing so would leave Resonac and its media component, which MRT repeatedly states is at the heart of its infringement theory, out of this case. *See, e.g.*, MR Technologies' Opposition to Defendants' Motion to Stay ("Opp."), Dkt. 36 at 4:4-6, 5:9-10, 17:14-15. Such an outcome would be plainly prejudicial to Toshiba because, as MRT is well aware from its deposition of Toshiba's declarant, Resonac maintains all the relevant technical information for the accused media product at issue in this case. Toshiba merely provides its desired requirements (in the form of dimensional size, capacity, and reliability expectations) and, following receipt and testing of the media product designed and manufactured by Resonac, inserts that media into Toshiba HDDs. *See* Declaration of Douglas Stewart in Further Support of Defendants' Motion to Stay ("Stewart Reply Decl."), Ex. A at 28:19-29:4. Critically, MRT is also aware that

Resonac does not provide detailed technical information about the media to Toshiba, even when/if Toshiba requests it. *Id.* at 33:5-34:8; 35:10-14; 37:4-38:4.

Moreover, MRT's request that this case move forward—before the Northern District renders a decision on MRT's pending motion to dismiss—would have this Court essentially moot any forthcoming decision by that court. But the Northern District's decision on MRT's motion will be, at a minimum, highly material to this Court's assessment of any judicial efficiencies involving the role of Resonac moving forward, which is the key issue in resolving Toshiba's motion to stay.

Ultimately, MRT's focus on a strict application of the first-filed rule and customer-suit exception is predicated on its repeated assertion that this Court's familiarity with the patents, technology, and magnetic recording media at issue from MRT's past litigation against Western Digital is determinative. MRT appears to suggest that the damage award it obtained against Western Digital, as well as this Court's prior rulings, will be somehow dispositive or impactful in this case.

To the contrary, collateral estoppel from that case does not apply to Toshiba, and the outcome of this case is not preordained based on the Court's handling of MRT's prior case against Western Digital. MRT's refrain that the Western Digital litigation involved Resonac media, and citation to trial testimony from that litigation, *see* Opp. at 3-5, is inaccurate. MRT is well aware that the Resonac media in Toshiba HDDs is not off-the-shelf media generally supplied to multiple HDD manufacturers but rather is custom-made to meet Toshiba's specific requirements. Accordingly, beyond the Court's historical knowledge of the patents and general understanding of media technology from a case that concluded in July 2024, the Western Digital litigation is entirely irrelevant to resolution of Toshiba's motion to stay.

Moving forward in this case will require MRT to establish entitlement to a finding of liability through the presentation of evidence directed to what MRT itself characterizes as "the critical 'nucleation host' claim limitation." *See* Opp. at 17. Any

evidence which MRT may seek to support its theory of liability as to that "critical . . . claim limitation" resides with Resonac, not Toshiba.

Given this pivotal evidentiary hurdle, the resolution of Resonac's involvement, whether as a declaratory judgment plaintiff in the Northern District or as possible intervenor in this case—which MRT repeatedly suggests is the proper procedural outcome—presents a threshold issue. The Northern District should be permitted to first resolve the pending dispute between MRT and Resonac so that this case can proceed in an orderly and efficient fashion, without significant scheduling impacts and duplicative litigation activity.

As such, Toshiba respectfully submits that its request for a stay should be granted to allow for Resonac's position as plaintiff in the Northern District, or potential intervenor in this Court, to be settled.

## II.  ARGUMENT

### A.  MRT's Regurgitation Of Arguments From Its Motion To Dismiss Or Transfer The Resonac Declaratory Judgment Action Are Misplaced

MRT's opposition largely recycles the arguments MRT made in its motion to dismiss or transfer Resonac's declaratory judgment action pending in the Northern District. *Compare* Stewart Reply Decl., Exs. B & C, *Resonac Hard Disk Corp., et al. v. MR Technologies, GmbH*, Case No. 3:25-cv-08631 (N.D. Cal.), Dkt. 25 at 6, 13-15 & Dkt. 38 at 2-6, 9-10, *with* Opp. at 4:24–5:28, 10:11–13:27, 14:11–16:25. While MRT may disagree with the viability of Resonac's declaratory judgment action, MRT has already filed its reply brief in support of its motion to dismiss the Northern District action; that reply brief is the proper vehicle for MRT to present those arguments. *See* Stewart Reply Decl., Ex. C, *Resonac Hard Disk Corp., et al. v. MR Technologies,*

*GmbH*, Case No. 3:25-cv-08631 (N.D. Cal.), Dkt. 38.[1] That issue is not before this Court, nor is that issue the subject of Toshiba's motion.

Toshiba requests relief in the form of a stay until Resonac's role and involvement is conclusively determined. Toshiba's motion to stay does not address the procedural merits of the Resonac action. MRT's conflation of these separate issues ignores the reality that a decision on MRT's motion to dismiss or transfer by the Northern District is the necessary first step in this Court's determination of the proper path forward.

If Resonac's declaratory judgment action is neither dismissed nor transferred, then this Court must determine whether and how to proceed given the circumstances of this particular case, *i.e.*, that MRT's infringement theory depends on the Resonac media contained in Toshiba's HDDs, about which Toshiba has limited technical information—a fact known to MRT at this point in the proceedings. If Resonac's declaratory judgment is dismissed or transferred, then this Court will have to first resolve issues of intervention by Resonac.

Contrary to MRT's insinuations, Toshiba has no input into or control over Resonac or its strategic decisions. Instead, Toshiba must react to the procedural posture resulting from Resonac's pending declaratory judgment action. Importantly, MRT tells both this Court and the Northern District that Resonac's intervention in this case is the correct course of action. *See* Opp. at 15 ("Resonac's proper remedy is straightforward: intervene, indemnify, or otherwise participate [in this case]."). But MRT has not represented that it will consent to such an intervention, and even if MRT

---

[1] In its opposition in this case, MRT argues that future litigation before this Court is inevitable because invalidity is not at issue in the Northern District action. Resonac has filed a motion for leave to amend its complaint to add claims for declaratory judgment of invalidity. Stewart Reply Decl., Ex. D, *Resonac Hard Disk Corp., et al. v. MR Technologies, GmbH*, Case No. 3:25-cv-08631 (N.D. Cal.), Dkt. 40.

made such a representation, this Court would still need to evaluate any intervention request under applicable legal standards.[2]

But MRT's declaration that Resonac *should* intervene here justifies, without more, granting a stay to await the Northern District's determination of MRT's motion to dismiss and/or transfer Resonac's declaratory judgement action and a reasonable time afterward to await the parties' responses to that determination. Under the applicable three-factor test governing the Court's discretion to stay proceedings, *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005), MRT's own position demonstrates that granting a stay will not cause MRT any hardship or inequity. To the contrary, a stay will enable, rather than complicate, the orderly course of this proceeding.

### B. Resonac, Not Toshiba, Possesses The Evidence MRT Requires To Prosecute Its Case

The vast majority of the asserted claims in this case relate to an apparatus for which Toshiba does not possess the critical technical information that MRT will need to satisfy its evidentiary burdens. All of the claims of the asserted '864 patent and three of the claims of the asserted '997 patent relate solely to a "magnetic recording medium." There is no question that the composition of this media is relevant to the claim limitation directed to the "nucleation host." MRT admits that claim limitation is at the core of its infringement case and that Resonac seeks a declaration of no direct[3] or indirect infringement with reference to this specific limitation. *See* Opp. at 5.

---

[2] While MRT's consent, if given, militates in favor of granting intervention, the decision remains with the Court.

[3] Elsewhere, MRT ignores that Resonac sought a declaratory judgment of no *direct* or indirect infringement and instead argues only about the hypothetical challenges MRT could face in proving indirect infringement. *See* Opp. at 1-2, 8-10, 14 (attempting to distinguish *Snap Light* by omitting Resonac's direct infringement cause of action).

The accused "medium" is designed, developed, and manufactured by Resonac using proprietary techniques known only to Resonac. All technical information about the composition and properties of that media is known by Resonac and not shared with Toshiba. *See* Stewart Reply Decl., Ex. A at 33:5-34:8; 35:10-14; 37:4-38:4. Toshiba provides media requirements, limited to parameters such as dimensional size, capacity, read/write speed, and reliability expectations, and the resulting Resonac media is custom made for Toshiba. *Id.* at 28:19-29:4.[4] Accordingly, MRT's repeated references to testimony from the Western Digital litigation that certain of the accused Western Digital HDDs may have used Resonac media is inapplicable here. *See* Opp. at 3, 4, 5. Moreover, numerous of the accused Western Digital HDDs contained media made entirely in-house by Western Digital. *See MR Techs., GmbH v. W. Digital Techs., Inc.*, No. 8:22-cv-01599-JVS-DFM, Dkt. 526 at 3 (C.D. Cal. July 8, 2024) (denying motion to exclude expert opinion based in part on evidence that "WD manufactures high-capacity platters in house"). As a result, Western Digital and Toshiba are very differently positioned as defendants before this Court in terms of the relevant technical information about the accused media in each company's possession.

Following the deposition of Toshiba's declarant, MRT already knows that *all* the technical information necessary to (dis)prove its allegations that Resonac's media satisfy the asserted claim limitations, *e.g.*, composition, structure, and properties of the media, are within Resonac's exclusive possession, custody, and control and that Toshiba, even when requesting it, has no access to that information. *See* Stewart Reply Decl., Ex. A at 33:5-34:8; 35:10-14; 37:4-38:4. Accordingly, Resonac's involvement in the resolution of both MRT's and Resonac's complaints is unavoidable, and the practical hardship to Toshiba of proceeding until Resonac's action is resolved warrants a stay. *See Lockyer*, 398 F.3d at 1110.

---

[4] Resonac is Toshiba's sole supplier of the accused media. *See* Stewart Reply Decl., Ex. A at 17:20-22.

MRT attempts to counter this evidentiary reality by pointing to the "system" claims of the '997 and '734 patents, which require a "writing head." MRT states that "the writing head [is] a required element of the *majority* of the asserted claims." Opp. at 1 (emphasis added). That is not correct. Of the 44 asserted claims, only 18 contain a "writing head" element (all 18 of which also require the claimed "media"). Accordingly, MRT's arguments about the importance of the writing head, *see id.* at 1, 11, are an immaterial distraction that does not change the fundamental importance of Resonac's custom-made media to each and every asserted claim.[5]

Accordingly, the testimony of the Toshiba declarant, as well as the representations of Resonac and the admissions made by MRT establish conclusively that MRT's case is entirely dependent on Resonac's involvement, the nature of which will shortly be clarified by the Northern District of California in its forthcoming decision on MRT's motion to dismiss or transfer. Until such time, a stay here is warranted.

### C. MRT's Prior Litigation In This Court Is Not Relevant To The Court's Calculus On Whether To Grant A Stay

MRT repeatedly asserts that this Court's handling of MRT's litigation against Western Digital should dictate not only the denial of Toshiba's stay request, but also the grant of MRT's motion to dismiss pending in the Northern District. According to MRT, this Court's understanding of the patents and underlying technology renders proceeding in the Northern District a dispositive waste of judicial resources. *See* Opp. at 3-4. MRT also cites this Court's construction of the claims of the patents-in-suit, rulings on summary judgment and *Daubert* motions, and presiding over the trial in the Western Digital as further justification that this Court, and only this Court, should

---

[5] Neither the independent nor dependent claims of the '997 or '734 patents contain language that describes or further limits the relationship of the claimed "writing head" to the magnetic recording media in any way.

7     DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY

hear MRT's case.  Opp. at 17.  MRT's efforts to press an advantage based on these facts are misplaced.

As an initial matter, MRT filed a separate, contemporaneous action against Seagate in the District of Minnesota involving the same patents-in-suit and targeting the media in accused Seagate HDDs.  *See MR Techs. GmbH v. Seagate Tech. LLC*, No. 0:25-cv-1460, Dkt. 1 (D. Minn., April 15, 2025).  Accordingly, MRT has already put in front of a *third* court the same issues that Resonac's complaint puts in front of the Northern District.  MRT thus put itself in the position of "start[ing] from scratch" in the District of Minnesota action against Seagate.  *See* Opp. at 8, 17.  MRT's arguments regarding judicial inefficiencies and potentially inconsistent decisions therefore lack credibility, and its assertions of potential prejudice that may arise from its own multi-jurisdictional enforcement efforts are self-inflicted.

Further, while this Court's prior claim construction is informative and, perhaps, persuasive in this case, it does not have preclusive effect against Toshiba.  Collateral estoppel cannot apply to Toshiba because Toshiba was not a party to the Western Digital claim construction process.  The same unavoidable legal standard holds true for MRT's action against Seagate.  Although the Court may ultimately adopt an identical construction for the same terms, MRT incorrectly positions it as a *fait accompli*, despite this Court in prior cases adjusting claim constructions from case to case because "it is better to get a claim construction right than it is to get a claim construction settled."  *See, e.g.*, *Kruse Tech. P'ship v. DMAX, Ltd.*, 2010 WL 11507591, Case No. SACV 09-00458-JVS (RNBx), at *3, *7-14 (C.D. Cal. July 14, 2010) (refusing to adopt claim constructions previously rendered by a court in same district in favor of "an independent inquiry" and modifying constructions accordingly; citing *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 966 (N.D. Cal. 2008) (internal quotation omitted)).

Moreover, MRT's opposition suggests that the Resonac-supplied media in the Western Digital HDDs is identical to the Resonac media in Toshiba's HDDs.  *See*

8      DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY

Opp. at 3-5. MRT knows that is not true and has not alleged otherwise in its Complaint. Toshiba's declarant testified that "the media provided by Resonac is specially designed for Toshiba." Stewart Reply Decl., Ex. A at 29:23-25 ("Q. Do you know whether the media provided by Resonac is specially designed for Toshiba? A. Yes. They are designed for Toshiba.").

Regardless, the mere fact that this Court has prior experience with the patents-in-suit does not change the procedural realities facing the parties—Resonac's action in the Northern District will either move forward or be dismissed. The parties will have clarity on this point shortly, following that court's April 9 hearing on MRT's motion to dismiss or transfer. Toshiba respectfully submits that the most pragmatic approach to this complex situation is to stay the instant case until resolution of MRT's motion is resolved by the Northern District of California court.

### D. The Customer-Suit Exception Applies Here

As laid out in Toshiba's motion, the customer-suit exception to the first-filed rule applies. MRT accuses Toshiba's HDDs of infringement solely because of the magnetic recording media component designed, manufactured, and sold to Toshiba by Resonac. Accordingly, MRT's dispute is really with Resonac, not Toshiba, and Resonac has filed suit in the Northern District to address the noninfringement of its media and the invalidity of the patents-in-suit. As such, the customer-suit exception applies: "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

This Court's decision in *Snap Light, LLC v. KimsAPrincess, Inc.* is applicable. MRT's sole point of differentiation for that decision—*i.e.*, that the second-filed action "was filed in the same district and assigned to the same judge as the first-filed action," Opp. at 14— was not mentioned as a factor that the Court considered in staying the first-filed case in *Snap Light* and has no bearing on the efficiency concern central to

the customer-suit exception. Moreover, MRT ignores key issues that the Court cited in rendering its decision in that case.

First, the Court expressly noted that the manufacturer in that case had "knowledge of the structure and function of the accused products," while there was "no indication" that the customer "had any knowledge or involvement in the technological aspects of the case that would relate to the infringement claims." *See Snap Light, LLC v. KimsAPrincess, Inc.*, Case No. 17-cv-05648-JVS(Ex) (C.D. Cal. Feb. 26, 2018), Dkt. 54 ("*Snap Light*") at 3-4.[6] Here, the record evidence establishes, that Resonac designs, develops, and manufactures the magnetic recording media that MRT states is central to its infringement claims—MRT does not, and cannot, dispute this fact. Accordingly, Resonac is best suited to defend against MRT's claims.

Second, Resonac is indemnifying Toshiba in this action, "which evidences that [Resonac] is the real party-in-interest." *Snap Light* at 3. Third, Toshiba has represented, *see* Dkt. 31 at 8, and continues to represent, that it will be bound by the infringement findings of the Northern District action. *See Snap Light* at 4.

As such, Resonac's case should take precedence because a stay would: (1) not prejudice MRT; (2) negate the hardship and inequity on Toshiba of moving forward without resolution of Resonac's dispute with MRT; (3) simplify the issues, proof, and legal questions in the case; and (4) result in the most efficient process for the Court and the parties. *See Lockyer*, 398 F.3d at 1110.

E. **A Stay Is The Most Efficient Path Forward Until Resonac's Role Is Clarified**

As this Court has indicated in the past, whether or not the scenario presented by Toshiba's motion to stay presents a direct application of the customer-suit exception is far less important than the greater concerns of fairness and judicial efficiency. *See, e.g., Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14-CV-02043-

---

[6] A true and correct copy of the *Snap Light* decision is attached as Exhibit H to the Stewart Decl. *See* Dkt. 31-1.

CAS, 2015 WL 3649605, at *6 (C.D. Cal., June 9, 2015) ("Although the customer suit exception does not directly apply, the Court concludes that staying the severed actions against the retail defendants would be the most efficient and fair course of action."). Even if the Court determines that the customer-suit exception to the first-filed rule is inapplicable, the most efficient path forward for the parties and the Court is to stay this case until Resonac's role in the parties' dispute can be resolved, whether through continued prosecution of its declaratory judgment action against MRT, or intervention in this case as urged by MRT.[7]

Here, efficient progress in the collection of evidence, particularly given Resonac's status as a Japanese corporation outside the reach of typical third-party subpoenas, weighs heavily in favor of waiting for the Northern District case to be resolved—one way or the other—before commencing potentially duplicative discovery and other litigation activity in this Court. Toshiba does not have possession of Resonac technical information pertinent to MRT's allegations of infringement and cannot obtain it. Accordingly, staying this case until Resonac's role is clarified constitutes the most reasonable and efficient use of resources of both the parties and the Court.

### III. CONCLUSION

For the foregoing reasons and those stated in the memorandum of points and authorities accompanying their motion to stay, Defendants Toshiba America Electronic Components, Inc. and Toshiba Electronic Devices and Storage Corporation respectfully request that the Court stay this case until at least 30 days following resolution of MRT's motion in the Northern District of California action.

---

[7] As noted above, MRT is silent about whether it will consent to or oppose any motion to intervene, should Resonac file one.

| | | |
|---|---|---|
| 1 | Dated: February 17, 2026 | Respectfully submitted, |
| 2 | | By: /s/David Yang |
| 3 | | HAWKINSON YANG LLP |
| | | David Yang (SBN 246132) |
| 4 | | *dyang@hycounsel.com* |
| 5 | | 8033 W. Sunset Blvd. #3300 |
| | | Los Angeles, CA 90046 |
| 6 | | (213) 634-0370 – Telephone |
| 7 | | (213) 260-9305 – Facsimile |
| 8 | | BRACEWELL LLP |
| 9 | | Douglas F. Stewart (pro hac vice) |
| | | *doug.stewart@bracewell.com* |
| 10 | | Patrick J. Connolly (pro hac vice) |
| 11 | | *patrick.connolly@bracewell.com* |
| 12 | | 701 5th Avenue, Suite 6850 |
| | | Seattle, Washington 98104 |
| 13 | | (206) 204-6271 – Telephone |
| 14 | | (800) 404-3970 – Facsimile |
| 15 | | David J. Ball (pro hac vice) |
| 16 | | *david.ball@bracewell.com* |
| | | 31 West 52nd Street, 19th Floor |
| 17 | | New York, New York 10019 |
| 18 | | (212) 508-6100 – Telephone |
| | | (800) 404-3970 – Facsimile |
| 19 | | |
| 20 | | *Attorneys for Defendants Toshiba America Electronic Components, Inc. and Toshiba Electronic Devices and Storage Corporation* |
| 21 | | |
| 22 | | |

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Toshiba America Electronic Components, Inc. and Toshiba Electronic Devices and Storage Corporation, certifies that this brief contains 3,266 words, which [choose one]:

     X  complies with the word limit of L.R. 11-6.1.

    ____complies with the word limit set by court order dated [date].

Dated: February 17, 2026.

By: */s/ David Yang*
HAWKINSON YANG LLP
David Yang (SBN 246132)
*dyang@hycounsel.com*
8033 W. Sunset Blvd. #3300
Los Angeles, CA 90046
(213) 634-0370 – Telephone
(213) 260-9305 – Facsimile

BRACEWELL LLP
Douglas F. Stewart (pro hac vice)
*doug.stewart@bracewell.com*
Patrick J. Connolly (pro hac vice)
*patrick.connolly@bracewell.com*
701 5th Avenue, Suite 6850
Seattle, Washington 98104
(206) 204-6271 – Telephone
(800) 404-3970 – Facsimile

David J. Ball (pro hac vice)
*david.ball@bracewell.com*
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100 – Telephone
(800) 404-3970 – Facsimile

*Attorneys for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

By:  */s/ David Yang*
David Yang (SBN 246132)