# Exhibit B

RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Brian Ledahl (SBN 186579)
*bledahl@raklaw.com*
Dale Chang (SBN 248657)
*dchang@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
12424 Wilshire Boulevard, 12FL
Los Angeles, California 90025
310/826-7474 – Telephone
310/826-6991 – Facsimile

*Attorneys for Plaintiff*
MR TECHNOLOGIES, GMBH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESONAC HARD DISK CORPORATION and RESONAC AMERICA, INC., <br><br>            Declaratory Judgment Plaintiff, <br><br> v. <br><br> MR TECHNOLOGIES GMBH, <br><br>            Declaratory Judgment Defendant. | Case No. 5:25-cv-8631-PHK <br><br> **MR TECHNOLOGIES' NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br><br> **Date: February 12, 2026** <br> **Time: 1:30** <br> **Courtroom: F – 15th Floor** |

RUSS, AUGUST & KABAT

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on February 12, 2026, at 1:30 p.m., in Courtroom F - 15th Floor of the above Court, before the honorable Peter H. Kang, or at such later date and time as may be set by the Court, Plaintiff MR Technologies, GMBH ("MR Tech" or "Plaintiff"), will and hereby does move for a for Order dismissing the complaint in this action pursuant Federal Rule of Civil Procedure 12(b)(6), or in the alternative, transferring venue to the Central District of California pursuant to 28 § U.S.C. 1404(a).

The motion is based on the attached memorandum of points and authorities, the declaration of Paul A. Kroeger and exhibits attached thereto, and any subsequently filed supplemental briefing and accompanying papers, the pleadings and papers filed in this action, and any other arguments, evidence and matters submitted to this Court at the hearing or otherwise.

RUSS AUGUST & KABAT

Dated: December 29, 2025      By: _/s/ Marc Fenster_
_____
Marc Fenster
Brian Ledahl
Dale Chang
Paul Kroeger

_Attorneys for Plaintiff_
MR TECHNOLOGIES, GMBH

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 3

    A.    The Parties ..................................................................................... 3

    B.    The CDCA's Extensive History with the Asserted Patents and Accused Technologies ................................................................... 4

    C.    The CDCA Case Against Toshiba ................................................. 5

    D.    This NDCA Declaratory Judgment Action ................................... 6

III.  LEGAL STANDARD ................................................................................ 6

IV.  THE COURT SHOULD DECLINE JURISDICTION IN FAVOR OF THE EARLIER-FILED CDCA CASE ..................................................... 7

    A.    This Case Should Be Dismissed Under the First-to-File Rule ............ 7

    B.    The Customer-Suit Exception Does Not Apply ................................ 10

          1.    The Exception Is a Narrow, Discretionary Doctrine Aimed at Efficiency Which Overwhelmingly Favors the First-Filed CDCA Case .......................................................... 10

          2.    Resonac's Indemnification Obligation Makes Participation in the CDCA Case the Proper Remedy ............... 13

V.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE CDCA ...................................................................... 15

VI.  CONCLUSION ....................................................................................... 19

RUSS, AUGUST & KABAT

# TABLE OF AUTHORITIES

**Cases**

*Aliphcom v. Wi-LAN Inc.*,
    10-CV-02337-LHK, 2010 WL 4699844 (N.D. Cal. Nov. 10, 2010)........... 18

*Am. Acad. of Sci. v. Novell Inc.*,
    No. 91-4300, 1992 WL 313101 (N.D. Cal. July 9, 1992) ........................... 12

*Barnes & Noble, Inc. v. LSI Corp.*,
    823 F. Supp. 2d 980 (N.D. Cal. 2011) ..................................................... 8

*Bristol-Myers Squibb Co.*,
    No. C 13-2045 SI, 2013 WL 3829599 (N.D. Cal. July 23, 2013) ............... 18

*Broadcom Corp. v. Agere Sys., Inc.*,
    No. C 03-02197 2003 WL 21982473 (N.D. Cal. Aug. 8, 2003) ................. 19

*Cisco Sys., Inc. v. TiVo, Inc.*,
    No. C 12-02766 RS, 2012 WL 3279532 (N.D. Cal. Aug. 10, 2012)...... 16, 18

*Eli Lilly & Co. v. Genentech, Inc.*,
    No. 13-CV-0919 YGR, 2013 WL 4396718 (N.D. Cal. Aug. 13, 2013)... 7, 16

*Finisar Corp. v. Capella Photonics, Inc.*,
    No. 20-CV-07629-EMC, 2021 WL 810227 (N.D. Cal. Mar. 3, 2021) ........ 14

*Ford Motor Co. v. United States*,
    811 F.3d 1371 (Fed. Cir. 2016) ................................................................ 14

*Futurewei Techs., Inc. v. Acacia Research Corp.*
    737 F.3d 704 (Fed. Cir. 2013) .................................................................. 8

*Gov't Emps. Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) .................................................................. 6

*In re Aliphcom*, MISC.
    NO. 971, 2011 WL 4630923 (Fed. Cir. Feb. 9, 2011)................................. 18

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) ......................................................... 7, 9, 18

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ................................................................ 16

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ................................................................ 10

RUSS, AUGUST & KABAT

ii

RUSS, AUGUST & KABAT

*Katz v. Siegler*,
909 F.2d 1459 (Fed. Cir. 1990) ................................................................ 10, 12

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015) ..................................................................... 8, 9

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014) ......................................................................................... 11

*Microchip Tech., Inc. v. United Module Corp.*,
CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) .............. 10

*Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Organisation*,
No. 6:06 CV 549, 2007 WL 4376104 (E.D. Tex. Dec. 13, 2007) ............... 12

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ...................................................................... 13

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
139 F.4th 1340 (Fed. Cir. 2025) .................................................................. 14

*MR Technologies GMBH v. Toshiba America Electronic Components, Inc.*,
No. 25-cv-00786-JVS-DFM (C.D. Cal. Apr. 15, 2025) ................................ 5

*MR Techs. GmbH v. Western Digital Techs., Inc.*,
No. 8:22-cv-01599-JVS-DFM (C.D. Cal. Aug. 26, 2022) ........................ 4, 5

*PETA, Inc. v. Beyond the Frame, Ltd.*,
CV 10-07576 MMM (SSx) (C.D. Cal. Feb. 16, 2011) ................................. 9

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct.
17, 2011) .................................................................................................*passim*

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
656 F.3d 966 (9th Cir. 2011) .......................................................................... 6

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997) ............................................................... 7, 16

*Ruckus Wireless, Inc. v. Harris Corp.*,
11–cv–019440–LHK, 2012 WL 588782 (N.D. Cal. Feb. 22, 2012) ............. 8

*Samsung Elecs. Co. v. Tech. Consumer Prods., Inc.*,
No. 1:23-CV-186, 2024 WL 1961320 (D. Del. May 2, 2024) .................... 11

*Stormedia Texas, LLC. v. Compusa, Inc.*, et al
No. 2:07-cv-00025 (E.D. Tex.), 2008 WL 2885814 (E.D Tex. July 23, 2008)
.......................................................................................................................... 15

iii

*Sybase, Inc. v. Vertica Sys., Inc.*,
    No. C-09-05647 MHP, 2010 WL 1689956 (N.D. Cal. Apr. 23, 2010) .. 17, 18

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006) ................................................................ 10

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009) ......................................................... 14

*Teledyne Techs. Inc. v. Harris Corp.*,
    No. CV 11-00139 DDP (AJWx), 2011 WL 2605995 (C.D. Cal. July 1, 2011)
    ................................................................................................................... 7

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .................................................................................... 6

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*,
    No. C 03- 3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ........ 17

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................... 15

28 U.S.C. § 2201(a) ............................................................................................ 6

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

## I.  INTRODUCTION

Six months before Resonac filed this action, MR Technologies ("MRT") sued Toshiba in the Central District of California ("CDCA"), alleging infringement of the same patents by the same accused hard disk drives (HDDs) at issue here. Toshiba makes and sells the accused HDDs. Resonac allegedly supplies the media used in those drives. Under the first-to-file rule, this later-filed declaratory action should be dismissed in favor of the earlier-filed case against Toshiba.

The CDCA is not just the first-filed forum; it is the most knowledgeable. Judge Selna, who is presiding over the Toshiba case, has already managed a complex case involving two of the three patents at issue here. Through that litigation, Judge Selna has developed a detailed understanding of the technology, construed the claims, adjudicated numerous infringement and validity disputes, presided over an eight-day jury trial, and entered judgment on a substantial verdict for MRT.

Resonac nonetheless asks this Court to exercise declaratory-judgment jurisdiction and declare that the accused HDDs do not infringe, under the apparent theory that the customer-suit exception to the first-to-file rule should give its claims priority. But the customer-suit exception is a narrow, discretionary tool aimed at efficiency, not a vehicle to undermine the jurisdiction of the court that has already invested substantial judicial resources in the patents and the technology. If Resonac truly believes it is the proper party to litigate these issues, the proper course is to intervene in the Toshiba case before the judge who has already climbed the steep learning curve required to adjudicate these issues.

Even setting aside the CDCA court's familiarity with the patents and technology, the customer-suit exception still does not justify Resonac's bid for declaratory relief here. The alleged direct infringer is Toshiba, not Resonac. Toshiba is the entity that imports, offers for sale, and sells the accused HDDs in the United States. Indeed, the claims of two of the patents-in-suit require a "magnetic recording system, comprising: a writing head." Resonac's standalone media has no

1

writing head and therefore cannot be the claimed "magnetic recording system." Only the accused HDDs have the claimed writing head, and it is Toshiba that makes and sells those HDDs. This means, as to the infringement allegations that give rise to any justiciable controversy here, Resonac is at most an indirect infringer whose liability cannot be resolved without litigating whether Toshiba's accused HDDs directly infringe. Toshiba's participation would thus be unavoidable and the case would expand into a full merits fight involving the same issues already being litigated in the first-filed action.

It would further complicate the dispute by introducing intent and knowledge questions unique to indirect infringement, including what Resonac knew and when, and what it intentionally encouraged or supplied for use in HDDs it knew Toshiba would import into the U.S. Proceeding here would therefore create disputes unnecessary to resolving the first-filed case against the direct infringer, while multiplying proceedings and risking inconsistent rulings. Indeed, MRT's enforcement efforts have been directed at HDD manufacturers, with no indication that MRT has ever intended to sue Resonac or any other media supplier. And so, absent this declaratory action, there would be no reason for any court to adjudicate these indirect infringement issues at all.

Worse, the Court or a jury could find that Resonac lacked the requisite intent or knowledge as to some accused products and resolve the indirect infringement issues on that basis without determining whether those products infringe. For example, Resonac may contend that it lacked knowledge of the patents until well after April 2019, the start of the damages period for Toshiba's alleged infringement. The Court could then dispose of the indirect infringement claims as to accused HDDs sold before Resonac became aware of the patents, without determining whether those products infringe. The parties would then be back to where they started as to those products in the Toshiba case, after needless discovery and motion practice here.

RUSS, AUGUST & KABAT

At minimum, the Court should transfer this action to the CDCA where the first-filed case against Toshiba is underway before Judge Selna. Toshiba is located in that forum, and Resonac has agreed to indemnify Toshiba and can participate there. And because both courts sit in California, any incremental difference in witness convenience or access to evidence is marginal at best. In these circumstances, the public-interest factors carry decisive weight: judicial economy, the pendency of the first-filed action, and the need to avoid duplicative proceedings and inconsistent rulings all point to the CDCA as the court best positioned to adjudicate MRT's claims efficiently and consistently.

## II.    FACTUAL BACKGROUND

### A.    The Parties

MR Technologies ("MRT") is a privately held company based in Austria. MRT owns U.S. Patent Nos. 9,928,864 ("'864 Patent," Ex. 1), 11,138,997 ("'997 Patent," Ex. 2), and 12,020,734 ("'734 Patent," Ex. 3) (collectively, "Patents-in-Suit"). In general, the patents relate to "multilayer exchange spring recording media … used in magnetic hard disk drives." *See* Ex. 4 (CDCA CC Order) at 1-2. The media includes a multilayered "nucleation host" in which "a property called 'anisotropy' increases as the layers get closer to the [underlying] hard magnetic storage layer." *See* Ex. 5 (CDCA SJ Order) at 3. "Anisotropy refers to the excess energy required to magnetize the grains in a layer from the easy direction to the hard direction." *Id*. "[T]he layers of the nucleation host act magnetically as steps, to assist in decreasing the amount of energy required to write to the hard magnetic storage layer." *Id*. The claims of the '997 and '734 patents require a "magnetic recording system, comprising: a writing head." *See* Ex. 2 ('997 patent) at claims 1, 7; Ex. 3 ('734 patent) at claim 1. The "writing head" is a separate component from the "magnetic recording media." *See id*.

Resonac Hard Disk Corporation ("RHDC") is a Japanese corporation that makes and sells magnetic recording media. Compl. ¶¶ 2, 18.

MR TECH'S MOTION TO DISMISS OR TRANSFER

Resonac America, Inc. ("REA") is a California corporation that purports to provide services "related to RHDC's business of selling magnetic recording media to customers." Compl. ¶¶ 3, 18.

MRT has never communicated with RHDC or REA much less accused them of infringement, and Resonac does not allege otherwise. *See generally* Compl.

## B.    The CDCA's Extensive History with the Asserted Patents and Accused Technologies

In August 2022, MR Tech asserted the '864 and '997 patents against Western Digital Technologies, Inc. ("WD") in *MR Techs. GmbH v. Western Digital Techs., Inc.*, No. 8:22-cv-01599-JVS-DFM (C.D. Cal. Aug. 26, 2022). The case was assigned to Judge Selna who presided over the case from start to finish.

The accused products were WD hard disk drives (HDDs) sold in the U.S. since March 27, 2018, the issue date of the '864 Patent. Some of the accused WD HDDs used magnetic recording media supplied by RHDC (formerly known as Showa Denko).[1] *See* Ex. 6 (July 23, 2024 Trial Tr. Vol. II) at 72:11-24 (WD director testifying that "Showa Denko media [are] used in the accused products").

In December 2023, after holding a technology tutorial and a claim construction hearing, the court issued a claim construction order construing the claims of the '864 and '997 patents. *See* Ex. 4 (CC Order); Ex. 7 (Tech Tutorial Hearing Tr.); Ex. 8 (Markman Hearing Tr.). One of the key terms the court construed was "nucleation host … comprises ferromagnetic layers with increasing anisotropy constant K from layer to layer." Ex. 4 (CC Order) at 9-11.

Between February and July 2024, the court held hearings and issued orders on numerous motions by the parties, including summary judgment motions regarding infringement and validity and *Daubert* motions challenging each side's infringement and validity experts. *See, e.g.*, Exs. 9 - 10 (SJ Orders); Ex. 11 (Daubert Order).

---

[1] Showa Denko changed its name to Resonac HD Yamagata Corporation in January 2023 and then to Resonac Hard Disk Corporation (RHDC) in July 2024. https://www.resonac.com/corporate/network/group/rhdc.html.

On July 26, 2024, after the court presided over an eight-day trial, the jury returned its verdict, finding both patents valid and infringed by the accused HDDs (including, as discussed above, HDDs containing RHDC media), and awarding $262,388,800 in damages to MRT. *See* Ex. 12 (Judgment).

In August 2024, MRT asserted the '734 patent against WD in *MR Techs. GmbH v. Western Digital Techs., Inc.*, No. 24-cv-01848-JVS-DFM (C.D. Cal. Aug. 22, 2024). The '734 patent is a direct continuation of and shares the same specification as the '997 patent. Nearly all the claim limitations of the '734 patent are identical to those of the '997 patent.

In May 2025, after having been resolved between the parties, the court dismissed both cases pursuant to the parties' joint stipulation of dismissal.

## C.    The CDCA Case Against Toshiba

In April 2025, MRT asserted the '864, '997, and '734 patents against Toshiba America Electronic Components, Inc. ("TAEC") and Toshiba Electronic Devices and Storage Corporation ("TDSC") (collectively, "Toshiba") in *MR Technologies GMBH v. Toshiba America Electronic Components, Inc.*, No. 25-cv-00786-JVS-DFM (C.D. Cal. Apr. 15, 2025). TAEC is a California corporation headquartered in Irvine, California. TDSC is a Japanese corporation. The case has been assigned to Judge Selna, ensuring efficiency and consistency in the adjudication of the patents and recurring claim construction, infringement, and validity issues.

In October 2025, after filing its answer to MRT's complaint, Toshiba filed an opposed motion to stay pending resolution of the present declaratory judgment action.[2] In the motion, Toshiba represents that "Toshiba has a contractual right to indemnification from Resonac in this circumstance, and Resonac has agreed to indemnify Toshiba in accordance with the terms of the parties' agreement." Ex. 13 at 6.

---

[2] The hearing date for the motion is currently set for March 2, 2026.

RUSS, AUGUST & KABAT

**D.  This NDCA Declaratory Judgment Action**

In October 2025, six months after MRT filed the Toshiba case, Resonac filed this action for declaratory relief. Resonac did so despite having agreed to indemnify Toshiba in the CDCA case and despite Judge Selna's deep familiarity with the patents and the underlying technology, including Resonac media used in the WD HDDs that were found to infringe. *See* Section II.B above.

Resonac seeks a declaration of non-infringement, alleging that its media does not meet the limitation "nucleation host … comprises ferromagnetic layers with increasing anisotropy constant K from layer to layer." Compl. ¶¶ 32, 37. The construction of this term was a core dispute in the CDCA case against WD. *See* Section II.B above. Resonac does not seek a declaration of invalidity.

## III.  LEGAL STANDARD

The Declaratory Judgment Act confers on district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995); 28 U.S.C. § 2201(a) (a court "*may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288; *see also R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) ("[W]e have allowed district courts broad discretion as long as it furthers the Declaratory Judgment Act's purpose of enhancing 'judicial economy and cooperative federalism'") (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998) (en banc)). "The district court … should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225.

Considerations of practicality and wise judicial administration carry particular weight in patent cases where courts invest heavily to learn the patents and relevant

RUSS, AUGUST & KABAT

technology. *See Teledyne Techs. Inc. v. Harris Corp.*, No. CV 11-00139 DDP (AJWx), 2011 WL 2605995 (C.D. Cal. July 1, 2011) (dismissing DJ action in favor of a parallel infringement action because the other court had "already issued claim construction rulings on three of the four patents at issue" and was "quite familiar with the patents at issue," making it inefficient and wasteful to proceed with the DJ action); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) ("Here, the trial court became very familiar with the only asserted patent and the related technology during a prior litigation. That, coupled with the fact there is co-pending litigation before the trial court involving the same patent and underlying technology, provides a substantial justification for maintaining suit in the Eastern District of Texas."); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("[I]n a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues."); *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 WL 4396718, at *6 (N.D. Cal. Aug. 13, 2013) ("[I]n highly technical cases . . . judicial economy favors transfer to a court that has a working familiarity with the background technology or science").

## IV. THE COURT SHOULD DECLINE JURISDICTION IN FAVOR OF THE EARLIER-FILED CDCA CASE

### A. This Case Should Be Dismissed Under the First-to-File Rule

The Court should decline jurisdiction in favor of the first-filed CDCA case against Toshiba given the substantially similar parties and issues and the CDCA court's deep familiarity with the patents and technologies at issue. *See* Section II.B above. "When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia*

RUSS, AUGUST & KABAT

*Research Corp.* 737 F.3d 704, 708 (Fed. Cir. 2013); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 986–87 (N.D. Cal. 2011) ("The first-filed action is preferred . . . unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.") (quotations omitted). "[T]he policy of the first-to-file rule[] is to maximize judicial economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *see also Ruckus Wireless, Inc. v. Harris Corp.*, 11–cv–019440–LHK, 2012 WL 588782 at *2 (N.D. Cal. Feb. 22, 2012) ("This rule promotes judicial efficiency and prevents the risk of inconsistent decisions that would arise from multiple litigations of identical claims."). "The application of the rule requires consideration of (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Proofpoint, Inc. v. In Nova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343, at *18 (N.D. Cal. Oct. 17, 2011).

All three factors weigh in favor of applying the first-to-file rule. There is no dispute the Toshiba case was filed before this declaratory judgment action. The parties and issues are sufficiently similar. Resonac's interest here is derivative of Toshiba's in the CDCA action. *See* Compl. ¶ 7 ("These claims are being asserted by MRT in at least one ongoing lawsuit … which appears premised on Toshiba's use of magnetic recording media that is supplied by Resonac."), ¶ 28 ("Toshiba has already requested that … Resonac indemnify and defend Toshiba with respect to MRT's infringement claims"); Ex. 14 (Toshiba's Motion to Stay) at 6 ("Toshiba has a contractual right to indemnification from Resonac … and Resonac has agreed to indemnify Toshiba in accordance with the terms of the parties' agreement."). Indeed, Resonac and Toshiba effectively concede the first-to-file rule applies by asserting the customer-suit exception to that rule. *See* Compl. ¶ 27 ("Toshiba relies upon Resonac to supply most (if not all) of the magnetic recording media for these

RUSS, AUGUST & KABAT

HDD products."); Ex. 14 at 1 ("These circumstances fall squarely within the customer suit exception").[3]

Given the substantial overlap, the Court should dismiss this case in favor of the first-filed CDCA action. *Futurewei*, 737 F.3d at 709 ("[K]eeping the issue in the [first-filed] case will serve key objectives of the first-to-file rule, including minimization or avoidance of duplication of effort, waste of judicial resources, and risk of inconsistent rulings that would accompany parallel litigation.") (quotations omitted). Dismissal is especially warranted because the CDCA court has already invested significant time and resources in learning the patents and relevant technologies (including Resonac media used in WD HDDs), construing the claims (including the "nucleation host" limitation that Resonac contests here), and in adjudicating similar non-infringement issues. *See* Section II.B above; *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) ("[H]aving the same magistrate judge handle this and the co-pending case involving the same patent would be more efficient than requiring another magistrate or trial judge to start from scratch."). Moreover, the risk of inconsistent decisions is even more prominent here because this Court would be deciding infringement issues in isolation given Resonac seeks only a declaration of non-infringement. *See generally* Compl.; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[T]he claims of a patent … must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

---

[3] "Regarding similarity of the parties, courts have held that the first-to-file rule does not require exact identity of the parties." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *see also PETA, Inc. v. Beyond the Frame, Ltd.*, CV 10-07576 MMM (SSx) (C.D. Cal. Feb. 16, 2011) ("Indeed, the first-to-file rule does not require identical parties *or* issues, so long as the actions are substantially similar or involve substantial overlap."); *Proofpoint*, 2011 U.S. Dist. LEXIS 120343, at *18 ("Although the first-filed rule is not *clearly* applicable here …the focus on judicial efficiency that underlies both the first-filed rule and the transfer analysis plainly supports the Court's decision to decline jurisdiction.") (emphasis original).

9

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

**B.     The Customer-Suit Exception Does Not Apply**

The customer-suit exception should not be applied here. First, the exception is a discretionary efficiency tool and applying it here would be extremely inefficient given the substantial overlap with the Toshiba case and the CDCA court's deep investment in these patents and this technology. Second, Resonac's indemnification obligation confirms the dispute belongs in the CDCA because the proper remedy is to intervene or otherwise participate in the Toshiba case, not to litigate a parallel declaratory suit in a different forum to chase a different outcome.

**1.     The Exception Is a Narrow, Discretionary Doctrine Aimed at Efficiency Which Overwhelmingly Favors the First-Filed CDCA Case**

Applying the customer-suit exception here would be tremendously inefficient and run counter to the very purpose of the exception. "The guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *Microchip Tech., Inc. v. United Module Corp.*, CV-10-04241-LHK, 2011 WL 2669627, *5 (N.D. Cal. July 7, 2011). The exception is not an entitlement for a supplier to displace the first-filed forum; it is a case-management doctrine, applied with "an eye toward wise judicial administration," conservation of resources, and comprehensive resolution. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).

Here, the CDCA court is the far better forum to resolve the dispute and would better serve judicial economy and the efficient resolution of the dispute. "Given the substantial similarity of the issues and the considerable energy already invested by the [CDCA], it would not be in the interest of justice or judicial economy for this Court to entertain [Resonac's] claim." *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343, at *20 (N.D. Cal. Oct. 17, 2011); *see also* Section II.B above.

10

Even setting aside the CDCA court's familiarity, the customer-suit exception still does not warrant entertaining Resonac's declaratory relief claims here. As in *Mitek*, extensive involvement by Toshiba, the direct infringer, would be required. It is Toshiba (not Resonac) that imports, offers for sale, and sells the accused HDDs in the United States. Resonac is therefore, at most, an indirect infringer and any indirect-infringement theory against Resonac necessarily turns on proof of direct infringement by Toshiba. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920 (2014) ("there can be no indirect infringement without direct infringement.") (citation omitted). Thus, "key elements of indirect infringement [] could not be proven (or disproven) without third-party involvement." *Mitek*, 139 F.4th at 1356. For example, "induced infringement requires a finding that the alleged infringer affirmatively induced that infringement with knowledge that the induced acts constituted patent infringement, and contributory infringement similarly requires that alleged infringer had knowledge of patent infringement." (internal quotations and citations omitted). Accordingly, in addition to proof of Toshiba's direct infringement, "investigation would be necessary to find what [Resonac] knew about [Toshiba's] activity and whether [Resonac] directed or encouraged some or all elements of such infringement[.]" *Id.* at 1356-57 (internal quotations omitted).

Other recent authority underscores the inefficiency. In *Samsung*, the court declined to give priority to the manufacturer suit where, as here, the customer (HGC) was the alleged direct infringer and the manufacturer's (TCP) exposure was derivative. *Samsung Elecs. Co. v. Tech. Consumer Prods., Inc.*, No. 1:23-CV-186, 2024 WL 1961320, at *1-2 (D. Del. May 2, 2024) ("[U]nlike a claim for direct infringement, for indirect infringement, Samsung will have to prove some *mens rea* on the part of TCP [which] means that resolution of the infringement case against TCP may not necessarily resolve the case against HGC."). The court explained that severing or staying the direct-infringer (customer) action would risk bringing the parties "back to square one" because the indirect-infringer (manufacturer) action

RUSS, AUGUST & KABAT

could be resolved without reaching the question of direct infringement. *Id.* at *2 ("For example, the Court or jury could conclude that TCP lacked the appropriate *mens rea*, decline to reach the infringement questions, and then everyone would be back to square one in the suit against HGC.").

The same is true here. Resonac may represent, for example, that it lacked knowledge of the patents until after the April 2019 start date of Toshiba's alleged damages period. The Court or a jury could then dispose of the indirect infringement allegations for HDDs sold before Resonac's alleged knowledge date without ever deciding whether those drives infringe. That would bring the parties right back where they started as to those products in the Toshiba action, having burned time and resources on duplicative discovery and motion practice in this Court for no substantive benefit. Far from promoting efficiency, such an outcome is the opposite of what the customer-suit exception is meant to accomplish. *Id.* at *2 n.2 ("That result defies the 'Supreme Court's mandate that determinations of priority between manufacturer and customer suits should be made with an eye toward wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]'") (citing *Am. Acad. of Sci. v. Novell Inc.*, No. 91-4300, 1992 WL 313101, at *2 (N.D. Cal. July 9, 1992) (cleaned up)); *see also Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990) ("[A] primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other."); *Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Organisation*, No. 6:06 CV 549, 2007 WL 4376104, at *3 (E.D. Tex. Dec. 13, 2007) ("[T]he customers' end products are what allegedly directly infringe, not the components [and so] [t]he [manufacturer action] would not completely resolve the issues of the [customer actions] as the fact-finder would still need to find that the customers directly infringed before finding that [manufacturer] indirectly infringed.").

The risk of wasted resources is particularly acute because MRT has targeted its enforcement efforts exclusively at HDD manufacturers, never threatening Resonac or any other upstream supplier. Absent Resonac's tactical decision to file this action, no court would need to resolve hypothetical indirect infringement theories against a component supplier. The only reason these derivative issues are now in play is because Resonac chose to manufacture a dispute that MRT itself declined to bring.

In sum, the customer-suit exception does not justify Resonac's attempt to avoid the CDCA court; it underscores why this later-filed DJ action should be dismissed.

### 2. Resonac's Indemnification Obligation Makes Participation in the CDCA Case the Proper Remedy

Resonac's indemnification obligation to Toshiba also counsels against the customer-suit exception. As the Federal Circuit explained, where a supplier has agreed to indemnify a customer that has already been sued, the supplier's proper course is to defend its customer in the earlier-filed customer action:

> A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was already underway in a Texas court. By agreeing to indemnify any one of their customers, Microsoft could defend its customers and efficiently and effectively participate in the Texas action.

*Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citation omitted). Consistent with *Microsoft*, this Court has likewise ruled that "where a manufacturer has an obligation to indemnify its customers, it has to 'stand in the shoes of the customers' in the district" where the customer suit is pending. *Finisar Corp. v. Capella Photonics, Inc.*, No. 20-CV-07629-EMC, 2021 WL 810227, at *4

RUSS, AUGUST & KABAT

1    (N.D. Cal. Mar. 3, 2021); *see also Teleconference Sys. v. Proctor & Gamble*

2    *Pharms., Inc.*, 676 F. Supp. 2d 321, 327 (D. Del. 2009) ("The customer suit

3    exception is applicable when the first suit is brought against the customer in a district

4    where the manufacturer cannot be joined as a defendant.").

5          That logic applies with full force here: by agreeing to indemnify Toshiba,

6    Resonac can "stand in the shoes" of and defend Toshiba in the CDCA action; it

7    cannot use indemnity to justify a second lawsuit in a second forum. Courts routinely

8    refuse to entertain declaratory actions when intervention in the first-filed customer

9    case is the efficient, orderly path. In *Mitek*, the Federal Circuit affirmed dismissal of

10   the supplier's DJ action where the district court concluded the "best" way for the

11   supplier to protect itself was to intervene in customer litigation. *Mitek Sys., Inc. v.

12   United Servs. Auto. Ass'n*, 139 F.4th 1340, 1356 (Fed. Cir. 2025) ("These concerns

13   do not undermine the district court's conclusion that intervention remains the more

14   effective avenue for Mitek to defend its software—particularly when weighed

15   against the practical challenges of pursuing this declaratory judgment action.").

16   Likewise, in *Proofpoint*, this Court declined declaratory judgment jurisdiction and

17   expressly encouraged the supplier to intervene in the first-filed infringement action

18   rather than proceed with a separate declaratory suit in a different forum. *See

19   Proofpoint*, 2011 U.S. Dist. LEXIS 120343, at *20 ("Instead, the Court encourages

20   Proofpoint to move to intervene in the Texas Action or bring a separate action for

21   declaratory judgment in the Eastern District of Texas and seek to relate that claim to

22   the Texas Action."). Resonac's proper remedy is straightforward: intervene,

23   indemnify, or otherwise participate in the first-filed action before the judge who

24   already knows the patents and the technology. *See Ford Motor Co. v. United States*,

25   811 F.3d 1371, 1379–80 (Fed. Cir. 2016) ("While the existence of another adequate

26   remedy does not necessarily bar a declaratory judgment, district courts may refuse

27   declaratory relief where an alternative remedy is better or more effective.") (citation

28   omitted).

RUSS, AUGUST & KABAT

Resonac's own litigation history confirms that intervention is the proper remedy. Resonac (formerly Showa Denko K.K. ("SDK"))[4] has intervened in at least one patent case involving its media, acknowledging that "intervention is the most efficient and expeditious way for SDK … to litigate the patent issues surrounding its recording media products and to adequately protect their own interests and those of their [] customers." *Stormedia Texas, LLC. v. Compusa, Inc.*, et al EDTX-2-07-cv-00025; Ex. 15 (Motion to Intervene); *see also id.* at 5 (SDK's "participation as a defendant will significantly expedite discovery, as information relating to the design and production of the recording media will be obtainable through usual discovery procedures."). Indeed, Resonac acknowledged that intervention better serves efficiency and judicial economy because a separate declaratory judgment action would "only multiply the number of different actions—possibly in different jurisdictions—litigating identical issues of patent infringement and invalidity … [which] the 'customer suit exception' was intended to avoid." *Id.* at 12-13.

## V.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE CDCA

If the Court does not dismiss this declaratory judgment action, it should transfer the case to the CDCA where Judge Selna can coordinate or consolidate Resonac's claims with the Toshiba case. The public-interest factor of judicial economy is decisive given Judge Selna has already invested substantial judicial resources in these patents and the technology, and having this Court re-do that work would waste resources and invite inconsistent rulings. The private-interest factors also favor transfer or are at worst neutral.

A district court may "for the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a) (1994). "Consideration of the interest of justice, which includes judicial economy, may be determinative to a

---

[4] *See* https://www.resonac.com/corporate/name-change.html.

Russ, August & Kabat

particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted); *see also In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."). "Thus, in patent litigation 'in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.'" *Cisco Sys., Inc. v. TiVo, Inc.*, No. C 12-02766 RS, 2012 WL 3279532, at *6 (N.D. Cal. Aug. 10, 2012) (citing *Regents*, 119 F.3d at 1565); *Proofpoint*, 2011 WL 4915847, at *7 ("[T]he focus on judicial efficiency [] underlies both the first-filed rule and the transfer analysis.").

As an initial matter, this action could have been brought in the CDCA because MRT is subject to personal jurisdiction there and events giving rise to Resonac's claims (which are derivative of MRT's infringement claims against Toshiba in the CDCA case) have occurred there.

As explained above, the CDCA case already places the asserted patents, the accused HDD technology, and the relevant parties before a single court. The CDCA court has invested substantial time learning the patents and the underlying magnetic-recording technology through extensive prior proceedings. *See* Section II.B above. Absent dismissal (or transfer), the very inefficiency the first-to-file rule is designed to prevent would result—multiple courts simultaneously addressing the same patents and overlapping infringement issues, with duplicative discovery and a heightened risk of inconsistent rulings. There is simply no reason to sacrifice the judicial economy and orderly case management achieved by adjudicating MRT's claims in the first-filed CDCA forum.

Regarding the private interest factors, the CDCA is more convenient for the parties. The alleged direct infringer Toshiba is located there; the first-filed case is

there; and litigating related issues before one court avoids duplicative depositions and discovery disputes that would otherwise be litigated twice.

To the extent Resonac points to REA's NDCA presence, REA's alleged role is ancillary at best. RHDC—not REA—"is the Resonac entity primarily responsible for design and manufacture of the magnetic recording media." Ex. 13 (Toshiba's Motion to Stay) at 9. And it is RHDC that owes the indemnification obligation to Toshiba. *Id*. at 4. ("Toshiba has, in accordance with the indemnification provision of its supply agreement with RHDC, specifically requested indemnification from Resonac with regard to the allegations in MRT's Complaint" and "Resonac has agreed to indemnify Toshiba in accordance with the terms of the agreement."). *Id*. at 4. By contrast, REA merely offers services "related to RHDC's business of selling magnetic recording media to customers." Compl. ¶¶ 3, 18. REA does not even allege that it provided any such services in connection with the accused Toshiba HDDs. Regardless, any difference in witness convenience "will be somewhat limited given the relatively close proximity between the Districts[.]" *Herrera v. Command Sec. Corp.*, No. C-12-1079 EMC, 2012 WL 6652416, at *9 (N.D. Cal. Dec. 20, 2012).

Indeed, the only plausible explanation for Resonac's decision to sue in this Court—a new forum with no meaningful connection to the parties, the patents, or the events giving rise to the dispute—is to sidestep Judge Selna's prior findings and established familiarity with these patents. *Sybase, Inc.*, 2010 WL 1689956, at *2 (granting transfer where "[p]laintiff's filing of this action smacks of forum shopping and a response to an unfavorable decision suffered in the Eastern District."); *Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03- 3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) ("[E]vidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily … and would often make the transfer of venue proper"). MRT has never indicated any intent to sue Resonac. MRT's enforcement conduct confirms the dispute belongs where MRT put it: against the direct infringer in the first-filed forum.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    Accordingly, the public-interest consideration of judicial economy far
2  outweighs any purported benefit of proceeding in NDCA. *See In re Vistaprint Ltd.*,
3  628 F.3d 1342, 1346–47 (Fed. Cir. 2010) (district court's prior experience with
4  patent-in-suit is a "legitimate and substantial" reason to transfer a related case to that
5  district); *Aliphcom v. Wi-LAN Inc.*, 10-CV-02337-LHK, 2010 WL 4699844, *3
6  (N.D. Cal. Nov. 10, 2010) (granting transfer because "the risk of inconsistent
7  judgments and waste of judicial resources must outweigh the equitable concern of
8  [DJ plaintiff's] convenience in litigating its claim."), *aff'd, In re Aliphcom*, MISC.
9  NO. 971, 2011 WL 4630923 (Fed. Cir. Feb. 9, 2011). The CDCA has lived with
10  these patents through the entire lifecycle of complex litigation. Asking this Court to
11  re-learn the technology, re-construe the claims, and issue infringement rulings that
12  might conflict with the CDCA's prior rulings, verdict, and judgment would be an
13  immense waste of judicial resources.
14    In these circumstances, transferring the dispute to the forum already familiar
15  with the patents and technology best serves the interests of justice by avoiding
16  duplicative discovery and claim-construction work, reducing the risk of inconsistent
17  rulings, and conserving judicial and party resources. *See Sybase, Inc. v. Vertica Sys.,*
18  *Inc.*, No. C-09-05647 MHP, 2010 WL 1689956, at *1 (N.D. Cal. Apr. 23, 2010)
19  (finding that instant suit was "merely round two" of litigation already pending in
20  Eastern District of Texas, and granting motion to transfer where the judge in that
21  district "ha[d] become very familiar with the related patent"); *Bristol-Myers Squibb*
22  *Co.*, 2013 WL 3829599, at *4 (granting transfer where the transferee court had
23  gained expertise from presiding over multiple suits involving the patents, including
24  issuing claim constructions and hearing substantive invalidity arguments); *Cisco*
25  *Sys., Inc. v. TiVo Inc.*, 2012 WL 3279532, at *6 (transfer promotes the "efficient and
26  expeditious administration of justice" where the transferee court is already familiar
27  with the relevant technology); *Broadcom Corp. v. Agere Sys., Inc.*, 2003 WL

18

MR TECH'S MOTION TO DISMISS OR TRANSFER

21982473, at *1 (granting transfer to court handling case on related patents to avoid duplicative work and wasted effort).

## VI. CONCLUSION

There is no reason for this Court to expend its resources on a parallel suit over the same patents and accused products. The Court should decline to exercise jurisdiction and dismiss this action or, at minimum, transfer it to the CDCA where it can be more efficiently managed with the first-filed Toshiba case by the court already familiar with the patents and the issues.

RUSS AUGUST & KABAT

Dated: December 29, 2025     By:  */s/ Marc Fenster*
                                 Marc Fenster
                                 Brian Ledahl
                                 Dale Chang
                                 Paul Kroeger

                                 *Attorneys for Plaintiff*
                                 MR TECHNOLOGIES, GMBH

RUSS, AUGUST & KABAT

MR TECH'S MOTION TO DISMISS OR TRANSFER

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2025, I electronically served the foregoing MR TECHNOLOGIES' MOTION TO DISMISS OR TRANSFER via email upon all counsel of record.

*/s/ Marc Fenster*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Civil Local Rules of the Northern District of California, including Civil Local Rule 7-4(b), counsel certifies that this Motion to Dismiss or, in the Alternative, Transfer complies with the applicable word-count limitations. This motion contains 5,820 words, excluding the portions exempt by the Local Rules.

Dated:  December 29, 2025

*/s/ Marc Fenster*

1