# Exhibit C

RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Brian Ledahl (SBN 186579)
*bledahl@raklaw.com*
Dale Chang (SBN 248657)
*dchang@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
12424 Wilshire Boulevard, 12FL
Los Angeles, California 90025
310/826-7474 – Telephone
310/826-6991 – Facsimile

*Attorneys for Plaintiff*
MR TECHNOLOGIES, GMBH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESONAC HARD DISK CORPORATION and RESONAC AMERICA, INC., | Case No. 5:25-cv-8631-PHK |
| Declaratory Judgment Plaintiff, | **MR TECHNOLOGIES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER** |
| v. | |
| MR TECHNOLOGIES GMBH, | **Date: February 11, 2026** |
| Declaratory Judgment Defendant. | **Time: 1:30** |
| | **Courtroom: F – 15th Floor** |

RUSS, AUGUST & KABAT

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.   RESONAC FAILS TO DEMONSTRATE THE FIRST-TO-FILE RULE DOES NOT APPLY ........................................................................ 2

    A.    Toshiba Is Not a "Mere Reseller" of Resonac's Media; The Customer-Suit Exception Does Not Apply ............................ 2

    B.    Judicial Efficiency Favors Proceeding In the Central District ............. 6

    C.    That Resonac's Liability Is For Indirect Infringement Weighs In Favor of Dismissal ................................................................ 8

    D.    Resonac's Indemnity Obligations to Toshiba Further Demonstrate Dismissal Is Appropriate ...................................... 9

    E.    Should The Court Defer To Judge Selna's Decision On Toshiba's Motion to Stay It Should Stay This Case Until It Receives The Ruling ............................................................. 11

III.  RESONAC FAILS TO SHOW THAT TRANSFER TO CDCA IS NOT THE PROPER ALTERNATIVE REMEDY ..................................... 11

    A.    The Central District Has Jurisdiction Over This Dispute .................. 11

        1.   Private Factors ........................................................... 11

            a)   Plaintiff's choice of forum ..................................... 11

    B.    Relationship Between Court and Causes of Action .......................... 12

    C.    Convenience of the parties and witnesses and availability of compulsory process ....................................................... 13

    D.    Relative access to sources of proof ........................................... 13

        2.   Public Factors .......................................................... 14

            b)   Relative Congestion of the Courts ......................... 14

            c)   Relative Familiarity of the Court with Applicable Law ............................................ 14

            d)  Public Interest in the Adjudication of Local Controversies ............................................ 14

            e)   Judicial Economy ............................................ 14

IV.  CONCLUSION ................................................................................. 15

i

**TABLE OF AUTHORITIES**

**Cases**

*Adobe Sys. Inc. v. Select Retrieval, LLC*,
No. 3:12-CV-2342-GPC-WMC, 2014 WL 497441 (S.D. Cal. Feb. 6, 2014) .................................................................................... 10

*Aliphcom v. Wi-LAN Inc.*,
10-CV-02337-LHK, 2010 WL 4699844 (N.D. Cal. Nov. 10, 2010) ............. 6

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................... 7, 13

*Altair Instruments, Inc. v. Telebrands Corp.*,
No. 2:19-CV-08967-SJO-JC, 2020 WL 1956516 (C.D. Cal. Mar. 31, 2020) 5

*Barrow S.S. Co. v. Kane*,
170 U.S. 100 (1898) ........................................................ 11

*Codex Corp. v. Milgo Electronic Corp.*,
553 F.2d 735 (1st Cir. 1977) ................................................ 6

*Cognex Corp. v. VCode Holdings, Inc.*,
No. 06-1040 JNEJJG, 2006 WL 3043129 (D. Minn. Oct. 24, 2006) ........... 10

*Cooper v. Curallux LLC*,
No. 20-CV-02455-PJH, 2020 WL 4051466 (N.D. Cal. July 20, 2020) ....... 13

*Corning Inc. v. Wilson Wolf Mfg. Corp.*,
639 F. Supp. 3d 877 (D. Minn. 2022) ...................................... 10

*EMC Corp. v. Bright Response, LLC*,
No. C-12-2841 EMC, 2012 WL 4097707 (N.D. Cal. Sept. 17, 2012) ......... 11

*Finisar Corp. v. Capella Photonics, Inc.*,
No. 20-cv-07629-EMC, 2021 WL 810227 (N.D. Cal. Mar. 3, 2021) ......... 10

*Google Inc. v. Rockstar Consortium U.S. LP*,
No. C 13-5933 CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014).............5

In *Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ............................................ 3

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) .............................................. 13

*Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.*,
No. 2:24-CV-00125-JRG, 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024) ...... 2

*Linksmart Wireless Tech. LLC v. Gogo Inc.*,
No. LACV1803335AGJDEX, 2018 WL 8367609 (C.D. Cal. Sept. 18, 2018)...................................................................5

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir.1987) ............................................... 12

RUSS, AUGUST & KABAT

ii

RUSS, AUGUST & KABAT

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ........................................................ 12

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ..................................................... 9, 10

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    No. 16-CV-06371-BLF, 2017 WL 1065334 (N.D. Cal. Mar. 21, 2017)...... 11

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    No. 5:11-cv-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ...... 7

*Samsung Electronics Co., Ltd. v. Technical Consumer Products, Inc.*,
    2024 WL 1961320 (May 2, 2024) ...................................................... 8

*Sillage LLC v. Kenrose Perfumes Inc.*,
    No. 8:14-CV-02043-CAS, 2015 WL 3649605, (C.D. Cal. June 9, 2015)...... 5

*Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14-CV-02043-CAS, 2015 WL
    3649605(C.D. Cal. June 9, 2015) ...................................................... 2

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
    473 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................. 4

*Snap Light, LLC v. KimsAPrincess Inc.*,
    Ex. G, Case No. 17-cv-05648-JVS(Ex), Dkt. 54 (C.D. Cal. Feb. 26, 2018) .. 6

*Stormedia Texas, LLC. v. Compusa, Inc.*, et al
    No. 2:07-cv-00025 (E.D. Tex.), 2008 WL 2885814 (E.D Tex. July 23, 2008)
    ...................................................................................................... 10

*TCT Mobile (US) Inc. v. Cellular Communications Equipment LLC*,
    Case No. SACV 20-00702JVS(ADSx), 2020 WL 8172714 (C.D. Cal. July
    31, 2020) ...................................................................................... 11

*Upaid Sys., Ltd. v. CleanDan*,
    No. SACV1800619ABSSX, 2018 WL 5279567 (C.D. Cal. July 25, 2018) .. 5

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ........................................... 12

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*,
    No. C 03- 3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003)........ 12

*WP Banquet, LLC v. Lowe's Companies, Inc.*,
    No. 216CV02137CASGJSX, 2016 WL 4472933 (C.D. Cal. Aug. 24, 2016) 5

*Xiaohua Huang v. Open-Silicon, Inc.*,
    No. 18-CV-00707-JSW (LB), 2018 WL 5099275 (N.D. Cal. Aug. 27, 2018)
    ...................................................................................................... 6

**Statutes**

35 U.S.C. §271(a) ...................................................................................... 8

## I.    INTRODUCTION

Resonac begins by requesting that the Court "defer [to] Judge Selna" concerning the issue of the customer-suit exception. Opp'n at 1. That the issues in this case should be decided by Judge Selna is the underlying premise of MRT's motion. Resonac demonstrates no reason that the case should not be dismissed in favor of the Toshiba Action or transferred to CDCA.

Resonac's attempt to invoke the customer-suit exception fails. Toshiba is not a "mere reseller" of Resonac's media. Instead, Toshiba incorporates the media into its HDD products, adds a writing head and other components, imports the HDDs into the U.S. and sells them in the U.S. under its own brand name. Resonac's liability is at best based on indirect infringement. The accused products are HDDs made, imported, and sold by Toshiba. Two of the three patents require a "magnetic recording system, comprising: a writing head," confirming that the alleged direct infringement centers on Toshiba's HDDs, not on Resonac's standalone media. And even as to Resonac's media, Toshiba is the entity that imports Resonac media into the US (by incorporating the media into Toshiba's HDDs and then importing those HDDs into the US). Overlap between liability for Resonac and Toshiba does not exist. Accordingly, application of the customer-suit exception is inappropriate.

Moreover, discovery from Toshiba Japan is directly relevant to Resonac's claims. As liability against Resonac is based on indirect infringement, evidence of the direct infringer, Toshiba, is directly at issue. All of the contact between Toshiba and Resonac, as well as Toshiba's manufacturing, occur in Japan. As a Japanese company, Toshiba Japan cannot be compelled to provide any discovery in this District. It can only be so compelled in CDCA where it has been served with process. This further shows why dismissal is appropriate.

Resonac's claims that judicial efficiency is found by proceeding in this District are unfounded. Resonac would have this Court ignore Judge Selna's extensive experience with the patents, including construing the claims and presiding over trial of two of them, in favor of starting anew in this Court. Resonac's concession that this case concerns allowing a "manufacturer … to … pursue a declaratory judgment action in its choice of forum" only demonstrates why this case does not belong in this Court. Opp'n at 14. This case has nothing to do with judicial efficiency. It

MR TECH'S REPLY ISO MOTION TO DISMISS OR TRANSFER

is simply an attempt by Resonac to escape prior rulings of an experienced Court that it now deems unfavorable.

Resonac likewise fails to show that MRT's requested alternative relief of transfer under §1404 is not appropriate. Judicial efficiency as well judicial process over third-parties weigh heavily in favor of transfer and no factors weigh against transfer.

Resonac's final request that the Court defer ruling on MRT's Motion until Judge Selna rules on Toshiba's motion to stay should be rejected. That Resonac's case should be dismissed under the first-to-file rule is clear under the controlling law. The correct result is to dismiss or transfer this case because CDCA is already adjudicating the merits.

## II. RESONAC FAILS TO DEMONSTRATE THE FIRST-TO-FILE RULE DOES NOT APPLY

Resonac's Opposition fails to show any reason the case should not be dismissed under the first-to-file rule. The customer suit exception is inapplicable as Toshiba is not a "mere reseller" of Resonac media. Should the Court decide to defer to Judge Selna's ruling on Toshiba's motion, it should stay this case in its entirety pending that ruling, not just stay the ruling on this Motion.

### A. Toshiba Is Not a "Mere Reseller" of Resonac's Media; The Customer-Suit Exception Does Not Apply

Resonac's claim that the customer-suit exception applies simply "because Toshiba incorporates [Resonac's] media into its HDD products" misstates the law. Opp'n at 6. The customer-suit exception requires more than mere "incorporation" of products. Instead, the customer must be a "***mere reseller***" who "resell[s] of an off-the-shelf product." *Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.,* No. 2:24-CV-00125-JRG, 2024 WL 4729750, at *2 (E.D. Tex. Nov. 8, 2024);  *Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14-CV-02043-CAS, 2015 WL 3649605, at *5 (C.D. Cal. June 9, 2015) ("The exception applies 'when the first suit is filed against a customer who is a mere reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods.'"). Where "Plaintiff's infringement allegations do not rely exclusively" on functionality or components provided by the manufacturer but instead on a "combination" provided by the manufacturer and the customer the exception does not apply. *Liberty Access Techs*, 2024 WL 4729750 at *2.

2

Here Toshiba is not a "mere reseller" of Resonac media. Toshiba does not sell Resonac media "off-the-shelf" to its customers. *Id.* at *2. Instead, it incorporates Resonac media along with other components into its HDDs which it then sells to its customers including those in the United States. An exemplary accused Toshiba HDD, the S300 Pro is depicted below:



https://toshiba.semicon-storage.com/ap-en/company/news/news-topics/2024/08/storage-20240809-1.html. As shown the branding on the HDD bears Toshiba's name. Any media supplied by Resonac is found inside the housing. A purchaser of the HDD would not know it contains any Resonac products. Resonac does not contend that a Toshiba customer has any way of purchasing Resonac media by itself directly from Toshiba.

Moreover, Resonac concedes that it does not supply a writing head to Toshiba. Opp'n at 3-4, 12; Ex. J, Lin Decl., ¶12. A "writing head" is requirement of six of the nine claims of the '997 patent and all twelve claims of the '734 patent. These are directed to a "magnetic recording system"—not just "media"—comprising a "***writing head.***" *See* Ex. 2 at claims 1-6, Ex. 3 at claims 1-12. Because Resonac does not supply the writing head, which is necessary for MRT's claims of infringement, Toshiba cannot be a mere reseller under the customer-suit exception. *Liberty Access Techs*, 2024 WL 4729750 at *2.

Resonac's discounting of the writing head as a "relatively minor" and "conventional" component to claim that the customer-suit exception still applies, Opp'n at 3-4, 12, has been rejected by the Federal Circuit. In *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), a patent holder sued General Motors ("GM") in the Southern District of New York for infringement of a patent covering AM stereo receivers. *Id.* Motorola, the manufacturer of integrated circuit boards used in the receivers, subsequently filed a declaratory judgment action in

RUSS, AUGUST & KABAT

Illinois. *Id.* The district court stayed the New York action under the customer suit-exception following a motion brought by GM. The Federal Circuit reversed noting:

> Patent claims 53 and 54, the only claims at issue in the New York action, are directed to AM stereo receivers... ***Motorola is not a manufacturer, user, or seller of such receivers.*** Whether Motorola's "technology" is used in the AM stereo receivers manufactured and sold by General Motors is pertinent only if Motorola would be liable, under law, for infringement. Motorola's position, with which Kahn agrees, is that it would not. The labeling of a party as an infringer, or as a mere producer of unpatented "technology", is not a "semantic game" as General Motors describes it.

*Id.* at 1081 (emphasis added). The Federal Circuit further noted the customer-suit exception does not apply because even if the plaintiff were to "prevail against Motorola … he would still have to relitigate the question of infringement against General Motors" and "damages against General Motors cannot be assessed in the Illinois Court … because the measure of General Motors' obligations for damages and Motorola's (if any) involve different parameters." *Id. See also SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) ("The claims in the Texas Litigation … involve allegations of manufacturing; the Texas Litigation defendants are not 'simply reseller[s] of the accused goods' …. The Court finds the customer-suit exception inapplicable here…").

The same factors causing the Federal Circuit to reverse the stay under the customer-suit exception in *Kahn* are present here. Not only is Resonac *not a manufacturer* of claimed magnetic recording system and writing head, but MR Tech would also still need to litigate the question of infringement, damages, and possibly validity against Toshiba even if it were to prove Resonac infringes. Perhaps in awareness of this conflict, Resonac repeatedly asserts "Toshiba has agreed to be bound by the decisions of this Court." Opp'n at 1, 4, 7, 8, 15 n.8 (citing Dkt. 25-16 at 6). However, Toshiba's actual statement is far from an unequivocal agreement to be bound. Toshiba only agreed to "acknowledge and accept the results of the Resonac proceeding" and then only *if* Judge Selna "stayed the instant case." Ex. 14 at 6. At present Toshiba has provided no agreement to be bound.

Moreover, in determining whether to apply the customer-suit exception courts should also consider "whether the manufacturers in the second-filed action are the only source of the allegedly

4

infringing activity or product." *Liberty Access Techs*, 2024 WL 4729750 at *2. *See also Kahn*, 889 F.2d at 1082 (District Court erred in "presuppose[ing] that there is no other source of circuits" other than purported manufacturer). Resonac presents no evidence that it is the only supplier of recording media to Toshiba.[1] Indeed, even Toshiba's declarant limited his review of the media at issue to the specific "Toshiba hard disk products referenced in MRT's Complaint." Ex. E, Atsumi Decl., ¶4. No evidence exists that Resonac is the sole supplier of all, or even most, of the media in the HDDs sold by Toshiba. For this additional reason, Resonac has failed to show that invocation of the customer-suit exception is proper.

Resonac's assertion that "Courts in this District and in the Central District have repeatedly held that similar circumstances merit staying customer suits" is false. Opp'n at 7. ***None*** of the cases it cites for this proposition stayed a first-filed case against a purported customer in favor of a second-filed case in a different district as here. *See Sillage LLC v. Kenrose Perfumes Inc.,* No. 8:14-CV-02043-CAS, 2015 WL 3649605, at *1, *3-*4 (C.D. Cal. June 9, 2015) (granting a motion to sever claims against the manufacturer and stay the claims against the retail defendants in the same suit); *Altair Instruments, Inc. v. Telebrands Corp.,* No. 2:19-CV-08967-SJO-JC, 2020 WL 1956516, at *1 (C.D. Cal. Mar. 31, 2020) (similar motion to sever and stay); *Linksmart Wireless Tech. LLC v. Gogo Inc.,* No. LACV1803335AGJDEX, 2018 WL 8367609, at *2 (C.D. Cal. Sept. 18, 2018) (staying certain consolidated actions filed in the same district); *Upaid Sys., Ltd. v. CleanDan,* No. SACV1800619ABSSX, 2018 WL 5279567, at *4 (C.D. Cal. July 25, 2018) (staying customer suit where manufacturer suit was filed first); *WP Banquet, LLC v. Lowe's Companies, Inc.*, No. 216CV02137CASGJSX, 2016 WL 4472933, at *3 (C.D. Cal. Aug. 24, 2016) (staying case in favor of first-filed declaratory judgment action in different district; noting in dicta stay under customer suit exception might be appropriate if manufacturer suit had been filed first); *Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933 CW, 2014 WL 1571807, at *9 (N.D. Cal. Apr. 17, 2014) (denying motion to stay or transfer brought by patentee in manufacturer suit

RUSS, AUGUST & KABAT

---

[1] Resonac appears not to have researched the extent to which it is the supplier to Toshiba. *See* Opp'n at 11 ("Resonac supplies substantially all, if not all, of the magnetic recording media in the accused Toshiba HDD products.").

5

RUSS, AUGUST & KABAT

where there was a dispute as to which was filed first); *Xiaohua Huang v. Open-Silicon, Inc.,* No. 18-CV-00707-JSW (LB), 2018 WL 5099275, at *6 (N.D. Cal. Aug. 27, 2018) (granting motion to intervene by manufacturer and staying case); *Snap Light, LLC v. KimsAPrincess Inc.,* Ex. G, Case No. 17-cv-05648-JVS(Ex), Dkt. 54 (C.D. Cal. Feb. 26, 2018) (staying case where second-filed case was filed in the same district and assigned to the same judge).

### B. Judicial Efficiency Favors Proceeding In the Central District

Resonac's claim that "judicial economy favors proceeding in this District," Opp'n at 9, is without merit. *Id.* Resonac would have this Court ignore Judge Selna's long history with these patents, including having engaged in claim construction and presiding over an eight-day jury trial concerning two of them, in favor of this Court starting anew. Tellingly, Resonac's only authority for "judicial experience [being] more of a negative than affirmative reason for the transfer" is *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1ˢᵗ Cir. 1977), a fifty-year-old First Circuit case that pre-dates the creation of the Federal Circuit. Modern case law holds the opposite. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1346–47 (Fed. Cir. 2010) (district court's prior experience with patent-in-suit is a "legitimate and substantial" reason to transfer a related case to that district); *Aliphcom v. Wi-LAN Inc.*, 10-CV-02337-LHK, 2010 WL 4699844, *3 (N.D. Cal. Nov. 10, 2010) (granting transfer because "the risk of inconsistent judgments and waste of judicial resources must outweigh the equitable concern of [DJ plaintiff's] convenience in litigating its claim").

Moreover, "[t]he need for additional discovery from … Toshiba" weighs in favor of dismissing this case under the first to file rule. Opp'n at 9. Resonac is simply wrong in contending that requests for such information from Toshiba "can be satisfied through regular discovery practices, including by subpoena, or through orders of the court." *Id.* Because Toshiba Japan is a Japanese entity, and a third-party to this proceeding, it outside of this Court's subpoena power and jurisdiction. Japan is not a signatory to the Hague Evidence Convention. Accordingly, no practical way exists to compel either the production of documents or depositions from Toshiba Japan in the Northern District of California. In contrast, Toshiba Japan has already been served in the Central District action and is thus required to produce documents and make its witnesses available for deposition in that District.

6

Resonac's reliance on the Mr. Lin's and REA's presence in this district is misplaced. Mr. Lin's declaration states only that he and REA "manag[e] relationships with certain U.S. customers, including Seagate and Western Digital." Ex. J, Lin Decl., ¶7. He does not opine that he has any role with Toshiba. Indeed, according to Mr. Lin the only Resonac employee with knowledge concerning its relationship with Toshiba is Motonori Usuki, who resides in Japan. *Id.* ¶10(b). Because Resonac has agreed to indemnify Toshiba in CDCA, MRT can obtain relevant discovery from Resonac through ordinary party discovery directed at Toshiba. By contrast, here, pursuing critical HDD-level evidence from Toshiba as a third-party, potentially overseas, would involve slower, costlier, and less reliable mechanisms like letters rogatory, higher discovery expenses, and the extreme difficulties of compelling Japanese witnesses. Further, as an employee of REA, Mr. Lin would presumably be available to testify at any trial in the Central District. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132–33 (C.D. Cal. 2009) ("The court accords less weight to the inconvenience of party witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated.").

Resonac likewise fails to show how Seagate and Western Digital have any relevant information such that their presence in this District matters. Resonac's Complaint does not seek any declaratory relief as to MR Tech's claims against either company. Moreover, Resonac has not sought to intervene in the Seagate action and did not seek to intervene in either case brought against Western Digital.[2] In any event, both Seagate and Western Digital are U.S. companies and could be compelled to provide discovery in the Central District action by way of subpoena.

Resonac's attempt to distinguish *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-cv-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011), fails. There the Court dismissed a case under the first-to-file rule where, as here, "Proofpoint's strongest justifications for declaratory jurisdiction involve its potential liability for indirect infringement and pursuant to

---

[2] Resonac takes inconsistent positions concerning Western Digital. After claiming that it might have relevant information (Opp'n at 9), Resonac goes on to assert "there are substantial differences between the accused Toshiba HDD Products and Western Digital's HDD products" (Opp'n at 10) and that "Western Digital has now licensed the Asserted Patents, which means those Western Digital Products cannot be accused again." (Opp'n at 22).

its alleged indemnification agreements. Both issues turn on a finding of direct infringement in the [originally filed] Action." *Id.* at *7. Moreover, similar to Resonac here with regard to the Central District, "Proofpoint has not argued that the Eastern District of Texas is an inconvenient forum in which to bring its claim, nor that it would be prejudiced by intervening in the Texas Action at this stage in the litigation." *Id.* The Court should follow *Proofpoint* and dismiss this action.

### C.     That Resonac's Liability Is For Indirect Infringement Weighs In Favor of Dismissal

Resonac's assertions that its direct infringement claims weigh in favor of the customer-suit exception fail. Opp'n at 12-13. As discussed above, Resonac cannot directly infringe the '997 and '734 Patents because it does not supply the writing head. Any liability Resonac may have for these patents is based on indirect infringement only.

As to the '864 Patent, which does not contain the writing head requirement, Resonac's claims are also limited to indirect infringement. Resonac can only be liable for direct infringement if it "makes, uses, offers to sell, or sells [the] patented invention, within the United States" or "imports into the United States the any patented invention." 35 U.S.C. §271(a). Notably, Resonac's Complaint contains no allegations that it manufactures or sell the media to Toshiba *in the U.S* or that it otherwise imports the media *into the U.S.* on behalf of Toshiba. Indeed, the Atsumi and Lin declaration indicate the sales occur in Japan and the importation is performed by Toshiba. *See* Ex. J, Lin Decl., ¶10(b) (all Resonac employees "knowledgeable about [Resonac's] sales distribution and marketing of the Resonac PMR media, including to Toshiba" are based in Japan"); Ex. E, Atsumi Decl., ¶7 (noting that "[t]he recording media that Toshiba purchases and receives from [Resonac] is fully fabricated"). Accordingly, any direct infringement allegations against Resonac based on Toshiba products is speculative; based on the current record, only indirect infringement liability is plausible.

Resonac's attempt to distinguish the District of Delaware's rejection of the customer-suit exception in *Samsung Electronics Co., Ltd. v. Technical Consumer Products, Inc.*, 2024 WL 1961320 (May 2, 2024), fails. There the Court held that the customer-suit exception could not be applied where the manufacturer's liability was based on indirect infringement:

8

RUSS, AUGUST & KABAT

Thus, to sever [customer] from the case and force Samsung to litigate its claim for
indirect infringement against [manufacturer] without a direct infringer "would
impose a substantial burden" on Samsung.… The burden is especially great in this
situation, where [customer] is the only alleged direct infringer (other than
[manufacturer]).…

*Id.* at *2 (citations omitted). The Court noted "the existence of direct and indirect infringement
claims against a manufacturer may allow for application of the customer-suit exception" but
declined to apply the exception as "given the uncertainty about whether and how TCP imported
the accused products into the United States, the Court has concerns about definitively concluding
that the direct infringement claims have 'legs.'" *Id.* at *3.

As Resonac's basis for liability is under an indirect infringement theory, resolution of
Resonac's claims would not necessarily "require adjudication of Toshiba's direct infringement."
Opp'n at 12. The Court or jury could find that Resonac lacked the intent to induce Toshiba to
infringe and fail to reach the underlying issue of whether the media uses the patented technology.
The lack of a factual record concerning importation, sale or use in the United States weighs against
application of the customer-suit exception as in *Samsung*.

**D.     Resonac's Indemnity Obligations to Toshiba Further Demonstrate
Dismissal Is Appropriate**

Resonac attempts to downplay the effect of the Federal Circuit's decision in *Microsoft v.
DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014), which recognizes that its indemnity obligation
requires it to intervene in the Toshiba Action instead of filing its own suit in a different district by
contending that "the Federal Circuit's reasoning in *Microsoft* is limited to the facts of that case."
Opp'n at 14. Notably, it provides no citation to any authority limiting *Microsoft* to its facts. In any
event, the facts of *Microsoft* are nearly identical the facts of this case:

A case has already been filed against these customers in the Eastern District of
Texas. Appellees cannot seek a declaration from a New York court on behalf of
customers they must indemnify where a suit against these very same customers on
all the same issues was already underway in a Texas court. By agreeing to
indemnify any one of their customers, Microsoft could defend its customers and
efficiently and effectively participate in the Texas action.

*Microsoft Corp.*, 755 F.3d at 904 (Fed. Cir. 2014). Resonac's attempt to distinguish the similar
holdings in *Finisar Corp. v. Capella Photonics, Inc.*, No. 20-cv-07629-EMC, 2021 WL 810227

9

(N.D. Cal. Mar. 3, 2021), and *Mitek Sys., Inc. v. United Services Auto. Assoc.*, 139 F.4th 1340 (Fed. Cir. 2025), fails for largely the same reason.

Importantly, Resonac cites no authority in which a manufacturer with an indemnity obligation was allowed to proceed with a second-filed case in a different jurisdiction under the customer-suit exception. Instead, most of its cases hold only that an indemnity obligation provides a manufacturer with standing to sue, nothing more. *See e.g.*, *Corning Inc. v. Wilson Wolf Mfg. Corp.*, 639 F. Supp. 3d 877, 886 (D. Minn. 2022) ("This [indemnity] obligation … establishes a reasonable apprehension of suit."); *Cognex Corp. v. VCode Holdings, Inc.*, No. 06-1040 JNEJJG, 2006 WL 3043129, at *6 (D. Minn. Oct. 24, 2006) ("Given … its agreements to indemnify its clients, Cognex establishes reasonable apprehension of suit…"). In the remaining case, *Adobe Sys. Inc. v. Select Retrieval, LLC*, No. 3:12-CV-2342-GPC-WMC, 2014 WL 497441 (S.D. Cal. Feb. 6, 2014), the patents holder's motion to dismiss under the first-to-file rule was denied as the court found the parties and issues between the cases were "neither the same nor substantially similar." *Id.* at *4.

Because it has agreed to indemnify Toshiba, Resonac can "stand in the shoes" of and defend Toshiba in the CDCA action—no justification exists for a second lawsuit in a second forum, especially where the issues are not identical and could remain to be tried against Toshiba. As Resonac itself recognized in *Stormedia Texas, LLC. v. Compusa, Inc.*, et al EDTX-2-07-cv-00025, "intervention is the most efficient and expeditious way for [it] … to litigate the patent issues surrounding its recording media products and to adequately protect their own interests and those of their [] customers." Ex. 15 at 1. Resonac retreats from this position by contending that "[i]n *Stormedia*, a declaratory judgment action would not have resolved substantially all claims at issue in the first-filed suit and thus carried with it a significantly greater risk of multiplication of proceedings." Opp'n at 15-16. Yet, the situation is the same here. Resonac's claims in this case, premised on indirect infringement, will not resolve the claims in the first-filed case. Moreover, Resonac has already multiplied proceedings by filing this separate case in a different jurisdiction. Resonac was right in *Stormedia*—the proper course of action based on its indemnity obligation is to intervene in the Toshiba Action.

10

RUSS, AUGUST & KABAT

### E. Should The Court Defer To Judge Selna's Decision On Toshiba's Motion to Stay It Should Stay This Case Until It Receives The Ruling

Resonac's request that this case proceed unabated and the Court dismiss or defer ruling on this Motion until Judge Selna decides Toshiba's Motion to Stay under the customer-suit exception is improper. Opp'n at 5-6. If the Court decides to defer to Judge Selna the correct relief is to stay *this case in its entirety* pending that ruling. This is the relief granted by the cases that Resonac cites. *See TCT Mobile (US) Inc. v. Cellular Communications Equipment LLC*, Case No. SACV 20-00702JVS(ADSx), 2020 WL 8172714, at *5 (C.D. Cal. July 31, 2020) ("the Court GRANTS the motion and **STAYS further proceedings in this action pending the Texas Action**"); *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2017 WL 1065334, at *3 (N.D. Cal. Mar. 21, 2017) ("the Court finds it appropriate to stay this action for a sixty (60) day period, and await a decision from the Arizona court"); *EMC Corp. v. Bright Response, LLC*, No. C-12-2841 EMC, 2012 WL 4097707, at *5 (N.D. Cal. Sept. 17, 2012) ("the Court STAYS the action pending resolution of EMC's motion in Texas").

## III. RESONAC FAILS TO SHOW THAT TRANSFER TO CDCA IS NOT THE PROPER ALTERNATIVE REMEDY

Resonac's attempt to avoid transfer likewise fails. As shown below, a majority of the factors—especially convenience of third-party witness and judicial economy weigh in favor of transfer. The remaining factors are at best neutral. The case should be transferred to CDCA if it is not dismissed.

### A. The Central District Has Jurisdiction Over This Dispute

Resonac's contention that CDCA does not have jurisdiction over this dispute is untenable. As both Resonac and MR Tech are foreign entities they may be sued "in any district in which valid service can be made upon the defendant." *Barrow S.S. Co. v. Kane*, 170 U.S. 100, 112 (1898). Likewise, as REA is a California corporation (Complaint ¶3), it is subject to jurisdiction in CDCA. 28 U.S.C. §1391. No dispute exists that this case could have been filed in CDCA.

#### 1. Private Factors

##### a) Plaintiff's choice of forum

Resonac's claim that the "presumption in favor of the plaintiff's choice of form is strong" is incorrect. "If there is any indication that plaintiff's choice of forum is the result of forum

RUSS, AUGUST & KABAT

1   shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman*, 157 F. Supp.

2   2d 1103, 1106 (N.D. Cal. 2001); *Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03-

3   3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) ("[E]vidence of plaintiff's attempt

4   to avoid a particular precedent from a particular judge weighs heavily … and would often make

5   the transfer of venue proper"). Far from mere "indication," Resonac admits the purpose of this

6   lawsuit is take MR Tech's claims out of CDCA and pursue them here in Resonac's "choice of

7   forum." Opp'n at 14. Moreover, "[t]he general rule favors the forum of the first-filed action."

8   *Micron Tech., Inc. v. Mosaid Techs., Inc*., 518 F.3d 897, 904 (Fed. Cir. 2008). Here, the first-filed

9   action is in CDCA and that forum is entitled to preference.

10      Finally, "[i]f the operative facts have not occurred within the forum of original selection

11  and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice

12  is entitled only to minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987).

13  Here, the operative facts have no connection to this District. All of the facts concern Resonac's

14  sales to Toshiba and Toshiba's importation which occurred in or from Japan. Resonac points to

15  REA as supporting this factor but provides no evidence that REA has any role with Toshiba. *See*

16  *generally* Ex. J, Lin Decl. At best, REA's evidence concerns the actions of certain Resonac's U.S.

17  customers which are not relevant to this action. Accordingly, this factor weighs in favor of transfer.

18      **B.    Relationship Between Court and Causes of Action**

19      Resonac untenably argues that "MRT does not attempt to address" the factor concerning

20  the relationship between CDCA and the causes of action. MRT's entire motion was premised on

21  the CDCA's familiarity with the causes of action and the fact that one of the Toshiba entities was

22  located in CDCA. As MRT explained in its motion, Judge Selna "is the most knowledgeable [about

23  this case]. Judge Selna, who is presiding over the Toshiba case, has already managed a complex

24  case involving two of the three patents at issue here…." Mot. at 1.

25      In trying to establish a relationship between this Court and the allegations of its complaint,

26  Resonac can only point to Resonac America's presence in this District. As explained above,

27  Resonac fails to show that Resonac America has any role with Toshiba or has any information

28  relevant to this suit. According, this factor weighs in favor of transfer.

**C.** **Convenience of the parties and witnesses and availability of compulsory process**

In arguing the convenience of the parties and the presence of witnesses weighs against transfer, Resonac points only to the presence of Resonac America and its employee, Mr. Lin, in this District. Opp'n at 18. In other words, it only relies on party witnesses. The law is clear that "[t]he court accords less weight to the inconvenience of party witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated." *Allstar Mktg. Grp., LLC*, 666 F. Supp. 2d at 1132–33 (C.D. Cal. 2009).

Resonac attempts to downplay the location of Toshiba's witnesses fails. The fact remains that Toshiba America is located in Irvine, in the CDCA, and any witnesses with relevant knowledge can be compelled to testify at trial. Likewise, Toshiba Japan has been served with summons in the CDCA action and thus must provide discovery there. The same is not true for this District as Toshiba Japan is not a party. Resonac's contention that "the Central District is not more convenient for than this District for [Resonac Japan employee] Mr. Atsumi," Opp'n at 19, misses the point. Mr. Atsumi could only be compelled to sit for a deposition in Japan because of the service of process on Toshiba Japan in CDCA. This District could not compel Mr. Atsumi, or any other Toshiba Japan witness to sit for deposition. This factor weighs strongly in favor of transfer.

**D.** **Relative access to sources of proof**

With regard to the factor of relative access to sources of proof, Resonac points only to electronic documents in the possession of Resonac America. Opp'n at 20. However, "[e]ase of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because 'advances in technology have made it easy for documents to be transferred to different locations.'" (*Cooper v. Curallux LLC*, No. 20-CV-02455-PJH, 2020 WL 4051466, at *4 (N.D. Cal. July 20, 2020). *See also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) ("The Fifth Circuit recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum."). Thus, setting aside the issue of whether Resonac America has any relevant information, the fact that it has electronic documents in this District matters little to the transfer analysis.

Russ, August & Kabat

13

In contrast, and discussed above Toshiba America, and its documents are located in Irvine within CDCA. Moreover, Toshiba Japan can only be compelled to produce documents in CDCA. Accordingly, this factor favors transfer.

## 2. Public Factors

### b) Relative Congestion of the Courts

The factor of congestion of courts also favors transfer. Resonac admits that the average time to trial in this District is 37 months. The first MR Tech case against Western Digital went to trial in only 23 months—it was filed August 26, 2022 and trial commenced July 16, 2024. *MR Technologies, GMBH v. Western Digital Technologies, Inc.*, Case No. SAVC 22-01599-JVS(DFMX), Dkt. No. 1 (Complaint dated August 26, 2022); Dkt. No. 527 (Civil Minutes—Trial July 16, 2024). The second *Western Digital* Case was scheduled to proceed to trial on November 10, 2026—27 months after its August 22, 2024, filing. Ex. 16.[3] These cases suggest a much faster time to trial than the averages relied on by Resonac. Opp'n at 21.

### c) Relative Familiarity of the Court with Applicable Law

MR Tech agrees that this factor is neutral.

### d) Public Interest in the Adjudication of Local Controversies

Resonac claims this factor favors transfer based, once again, on Resonac America's presence in this District. Opp'n at 21. MRT disagrees that Resonac America has any relevance to this case for the reasons stated above. Resonac also ignores that Toshiba America is located in the Central District. Accordingly, the Central District has at least as much of an interest in the outcome of this case as does the Northern District. This factor is at best neutral if it does not favor transfer.

### e) Judicial Economy

That judicial economy favors transfer to a district that has already gone through claim construction and trial on two of three asserted patents is discussed above and in MRT's Opening Brief. Resonac attempts to refute these facts by parsing hairs. First, Resonac asserts that Western Digital case "undisputedly involves different products." Opp'n at 22. While the Western Digital case did involve different hard drives there is no evidence that the media in the drives was

---

[3] The Court ordered an earlier trial date than the February 23, 2027, date requested by the parties in their Rule 26(f) Report. Ex. 17.

14

materially different. Indeed, Western Digital's director of revenue operations and accounting testified at trial that Western Digital's media was supplied by Resonac—then Showa Danko—similar to what Resonac claims in this suit: Ex. 18, Day 6 Trial Tr. at 72:11-24. ("Q And who has Western Digital purchased media from? …. THE WITNESS: Showa Denko … Q What are -- are the Showa Denko medias used in the accused products? A Yes.").[4]

Second, Resonac claims it is "speculative" and not "guarantee[d]" that any transferred case would be assigned to Judge Selna. Although, not guaranteed, it is highly likely. Both the second Western Digital Case and the Toshiba Case were assigned to Judge Selna. Indeed, Judge Selna ordered the second Western Digital case to be assigned to his docket after it was originally assigned to a different judge. Ex. 19.

Next, Resonac asserts that "MRT's judicial economy argument collapses" because of MRT has enforced its patents against Seagate in the District of Minnesota. Opp'n at 24. Resonac does not address the fact that MRT was forced to file against Seagate outside of the Central District due to lack of jurisdiction in that District. Indeed, the Judge in that case stated it would have been preferable to transfer the case to Judge Selna had the rules permitted. Ex. 20 at 38 ("It would be efficient. I'm going to have to look at Title 28 to see if there's some basis for me to send this [case] to [Judge Selna]."). In any event, Resonac cannot refute that it would be more efficient to have disputes concerning these patents pending in two jurisdictions rather than three. Transfer to CDCA would thus result in significant gains to judicial economy.

## IV. CONCLUSION

MRT's Motion should be granted.

---

[4] Resonac falsely claims that MRT "uniquely posses[es] … information concerning similarity of the Western Digital and Toshiba products. Opp'n at 22 n.10. This "similarity" could only be shown by comparing the "recipe" information concerning the layer composition of the various media. Toshiba and Resonac hold this information highly confidential and do not release it publicly. As discovery has not opened, MRT does not have this information. In contrast, Resonac must know the composition of the media it has sold to both entities.

15

RUSS AUGUST & KABAT

Dated: January 28, 2026          By:    /s/ Marc Fenster
                                        Marc Fenster
                                        Brian Ledahl
                                        Dale Chang
                                        Paul Kroeger

                                        *Attorneys for Plaintiff*
                                        MR TECHNOLOGIES, GMBH

16

**CERTIFICATE OF SERVICE**

I certify that on January 28, 2026, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

/s/ Marc Fenster

RUSS, AUGUST & KABAT

1